Chas. Cohoon, Appellant, v. The Chicago, Burlington & Quincy Railway Company.

| 90 | 169 |
| 103 | 593 |
| 90 | 169 |
| 106 | 139 |
| 90 | 169 |
| 118 | 354 |
| 90 | 169 |
| 138 | 551 |

Train Running at Unlawful Speed : Injury to Property Other than Stock at Large at Point Where Fencing is Not Required. Under Code, section 1289, there is no liability for damages caused by running a train at unlawful speed at a point where the company is not required to fence, as at depot grounds, except for injury to live stock "running at large." (2)

Speed not negligence per se. Running a train upon depot grounds at from twenty-five to thirty-five miles per hour is not, in the absence of statute, negligence per se. (3)

*Appeal from Adams District Court.*—HON. H. M. TOWNER, Judge.

WEDNESDAY, JANUARY 31, 1895.

ACTION to recover damages for personal injuries, and for damages to horses and wagon. Jury trial. Verdict, by order of court, for defendant. Plaintiff appeals.—*Affirmed.*

*James G. Bull* and *Thomas L. Maxwell* for appellant.

*Smith McPherson* and *H. T. Granger* for appellee.

KINNE, J.—I.   The petition charges the defendant with negligence in running its train, which struck defendant's wagon and caused the injuries, on the depot grounds in the city of Villisca, at a greater rate of speed than eight miles per hour. It is averred that by reason thereof the accident happened, and that plaintiff did not contribute thereto. It is also claimed that defendant was guilty of negligence in the speed at which it ran its train, regardless of the statutory negligence pleaded. The answer was a general denial. The court, at the close of plaintiff's testimony, and on defendant's motion, directed the jury to return a verdict for defendant, which was done.

II.   The first question raised for our consideration is as to whether defendant was guilty of statutory negligence in running its train at a greater rate of speed than eight miles an hour within the depot grounds of defendant. There is no dispute as to the facts touching this matter. All the evidence showed that the train, at the time of the accident, was running at a speed of from twenty-five to thirty-five miles an hour upon depot grounds necessarily used by the company and the public. The statute relied upon by appellant

is Code, section 1289.   In order to present the matter
intelligently, it is necessary to set out this section, as
the particular clause in controversy is so connected
with the balance of the section that, to properly construe
it, it should be read in connection therewith.   The
section reads:   "Any corporation operating a railway,
that fails to fence the same against live stock running
at large at all points where such right to fence exists,
shall be liable to the owner of any such stock injured
or killed by reason of the want of such fence for the
value of the property or damage caused, unless the
same was occasioned by the willful act of the owner or
his agent.   And, in order to recover, it shall only be
necessary for the owner to prove the injury or destruc-
tion of his property; and if such corporation neglects
to pay the value of or damage done to any such stock
within thirty days after notice in writing, accompanied
by an affidavit of such injury or destruction, has been
served on any officer, station or ticket agent employed
in the management of the business of the corporation
in the county where the injury complained of was
committed, such owner shall be entitled to recover
double the value of the stock killed or damages caused
thereto; provided, that no law of this state, nor any
local or police regulations of any county, township,
city or town, regulating the restraint of domestic
animals, or in relation to the fences of farmers or land
owners, shall be applicable to railway tracks, unless so
specifically stated in the law or regulation.   The oper-
ating of trains upon depot grounds necessarily used by
the company and public, where no such fence is built,
at a greater rate of speed than eight miles per hour,
shall be deemed negligence and render the company
liable under this section.   And provided further, that
any corporation operating a railway shall be liable for
all damages by fire that is set out or caused by operating
of any such railway, and such damages may be recov-

ered by the party damaged in the same manner as set forth in this section in regard to stock, except as to double damages." The original of this section was enacted in 1862. See chapter 169, section 6, Acts of Ninth General Assembly. As originally passed, the act did not contain any provision limiting the speed of trains upon depot grounds. That provision first appears in the Code of 1873, and in its present form. The section, as it now reads, contains a provision making railway companies liable for killing stock running at large, at all points where they have a right to fence, and have not done so, if the damage or injury resulted from a want of such fence. It contains a provision making such companies liable for damages by fire set out or caused by them in the operation of their roads, and also the provision in controversy, relating to the rate of speed upon depot grounds.

We think the provision in controversy has no relation to a case like that at bar. Before this speed-limit clause was inserted in this section, the section fully provided for liability for damages to live stock running at large, at all points where the company had a right to fence its right of way. This court had repeatedly held, after this original section was adopted, that railway companies were not required to fence where, in view of the public convenience, it would not be fit, proper, or suitable to do so. We need not cite the cases. They covered depot grounds. There was then no statutory provision whatever touching the liability of railway companies for damages to stock which might be injured while running at large at depot grounds, or other places where the necessities of the public in connection with the railway company were such as to prevent the latter from fencing its track. It was for the purpose of affording statutory relief in such cases that this speed-limit clause was inserted in this section. It is urged that the language used is general, and must,

therefore, be held to apply to all cases of injuries to persons or property at depot grounds. This court has already held that this section did not cover a case of an injury to a horse and wagon which were being driven across the tracks of a railway within the limits of depot grounds. It was said that: "As the horse killed was not running at large, the material inquiry is whether the plaintiff was entitled to recover under this section. This inquiry must be answered in the negative. It seems to us that it is not possible to construe the statute otherwise. This is what the statute plainly says. "The only liability under it is for stock injured or killed, which is running at large." *Johnson v. Railway Co.,* 75 Iowa, 158, 39 N. W. Rep. 242. It will thus be seen that this court has already said, in substance, that this statute has no application to anything except cases of stock running at large, and has expressly said that a case of stock killed on depot grounds by a train running at a rate of speed greater than eight miles an hour, and which is at the time being driven by the owner, is not within the protection of the clause limiting the rate of speed. If appellant's contention is correct, this provision limiting the rate of speed applies to all cases of damages to persons and of damages to stock, whether running at large or in the control of the owner. There can be no reason why, if the words are to be construed generally, and without reference to the connection in which they are used, and without regard to what gave rise to their insertion in this section, they should be held to apply to a case of injury to a person, and not to an injury to an animal being driven by that person. Yet such would be the result, unless we should overrule *Johnson's case.* The use of the word "public" in no wise tends to make this provision of the statute of general application. That, and the words preceding it in the same sentence, are simply descriptive of the place or places where the operation of trains at a greater rate

of speed than eight miles an hour shall be deemed negligence. This provision of the statute is not ambiguous, nor do we think the legislative intention, as evidenced by the language used, is doubtful. In construing statutes, we may take into consideration all acts relating to the same subject-matter. The legislature has expressly vested in cities and towns power to limit by ordinance the speed of trains. Code, section 458. There was, then, no need of another statutory provision covering the same matter within the same territory. No mischief remained to be remedied by a statute limiting the rate of speed upon depot grounds, as the several cities and towns in the state were clothed with ample authority touching that matter. There is then no seeming necessity, even, for giving this provision of the section the broad construction contended for by appellant, and which, to our minds, is not warranted by the language used, when we consider the circumstances under which the provision was enacted, and its evident object when viewed in the light of the balance of the section. We therefore hold that the provision under consideration applies only to cases of damages or injuries to live stock running at large. There was, then, no statutory negligence in this case.

III. As to negligence, other than statutory, it may be said that this court has frequently decided that no particular rate of speed can be said to be, *per se*, evidence of negligence, in the absence of statutory regulations. It may be considered in connection with other matters as showing negligence. *McKonkey v. Railway Co.*, 40 Iowa, 205; *Artz v. Railway Co.*, 44 Iowa, 284; *Latty v. Railway Co.*, 38 Iowa, 250. In this case there is no evidence that the defendant was negligent in the rate of speed at which it ran its train. There is no claim that the whistle was not sounded or bell rung, and no other facts which show that the rate of speed at which the train was running was, under all the circum-

stances, such as that it can be said that defendant was guilty of negligence. It follows that as no negligence was established, as against the defendant, there could be no recovery in this action, regardless of the question of plaintiff's negligence, which, in the view we have taken as to the other branch of the case, we need not consider. The court properly directed a verdict for the defendant. AFFIRMED.