EDWARD HERDMAN, Administrator of the Estate of Margaret Herdman, Deceased, Appellant, v. ALBERT J. ZWART, Appellee.

Negligence: AUTOMOBILE ACCIDENT: USE OF STREETS: VIOLATION OF LAW. In an action for damages under the statute and a similar ordinance requiring travelers upon the highway when meeting each other to turn to the right and give half the road, a failure to observe the same makes a prima facie case of negligence, placing the burden upon the one who was on the wrong side of the highway to show that he was in the exercise of due care, in view of all the circumstances. Negligence is not conclusively established by a mere showing that one was on the wrong side of the highway when meeting or passing another traveler.

Same: NEGLIGENCE: REQUIRED CARE: INSTRUCTIONS. In an action for injury to decedent while riding in a carriage with her husband who was driving, caused by the fright of the horse at defendant's automobile, an instruction that in "so far as lay in her power she was required to exercise the same care as any ordinarily prudent person would be required to exercise under like circumstances," was not prejudicial because laying the duty of extraordinary care upon decedent; but rather implied that decedent was excused from the exercise of that measure of care required of an ordinary person, in case she was laboring under any mental or physical disability.

Same: NEGLIGENCE: PROXIMATE CAUSE. Where a frightened horse was brought under control after the collision with the defendant's automobile, and was driven some distance though restless from fright, when it then ran away causing decedent's injuries, defendant's negligence, if any, in the operation of his automobile was not the proximate cause of the injury.

Same: ASSUMPTION OF RISK: INSTRUCTIONS. The instruction that if a decedent knew and appreciated the danger of riding after a horse while nervous from its previous fright she assumed the risk and could not recover, was not misleading, although the term "assumption of risk" is usually used in cases growing out of the relation between master and servant.

Same: NEGLIGENCE: PROXIMATE CAUSE: EVIDENCE. The evidence in this case is held to support a verdict for defendant even if there was negligence on the part of defendant in causing the fright of

the horse, as such negligence was not shown to have been the proximate cause of the subsequent injury to decedent.

*Appeal from Polk District Court.*—HON. CHARLES S. BRAD-SHAW, Judge.

SATURDAY, NOVEMBER 28, 1914.

ACTION for damages for personal injuries. There was a verdict and judgment for the defendant, and plaintiff appeals. *Affirmed.*

*Thos. A. Cheshire,* for appellant.

*Parker, Parrish & Miller,* for appellee.

EVANS, J.—This action was brought by Margaret Herdman, as plaintiff in her lifetime. She died pending the action, and her husband was substituted as her administrator. The decedent was severely injured in a runaway while riding with her husband in a buggy drawn by her husband's horse. The claim is that the horse was frightened by the defendant's automobile. The facts are not greatly in dispute.

The accident occurred on the night of July 6, 1912, at about 10 o'clock at night. The defendant was driving north on Seventh street, Des Moines. While driving along the east side of the street, he observed a standing automobile. In turning to the left to pass such automobile, his lights disclosed plaintiff's horse and buggy in front of him going north. The defendant was at that time quite close to the buggy, and, as he claims, he could only pass it safely on the right side. He passed either between it and the automobile or between it and the east curb. His fender grazed the buggy and frightened the horse. The horse started to run, turning to the left, but was stopped within a very short distance. The incident attracted the attention of a number of persons, who at once came upon the scene. An examination was had of the buggy to ascertain the damage, if any. The injury to the buggy was very

slight, and nothing is claimed for it in this action. The horse was nervous as a result of the fright, but was entirely under control. The defendant stopped his automobile and joined in investigating the injury to the buggy. He also offered to take the decedent and her husband in his automobile to their home, which was two or three miles distant. After a period ranging according to the testimony from five to twenty minutes, the defendant proceeded in his automobile to his home, three blocks away. A few minutes later the decedent and her husband proceeded on their way with the horse and buggy. After proceeding a short distance, the horse again took fright and ran away, throwing both of the occupants out of the buggy, and injuring the decedent seriously.

The claim for the plaintiff is that the defendant was negligent in passing the decedent's buggy in the way in which he did, and that, as a result of such negligence, the horse was greatly frightened, and that such fright continued down to the time that he ran away. It was also pleaded by the plaintiff that the fright of the horse was caused the second time by the starting of defendant's automobile when he left for his home. But there was no evidence of any negligent conduct on the part of defendant at that time, and that charge of negligence does not seem to have been pressed at the trial, and was not submitted to the jury.

It is contended for the defendant that he was not guilty of any negligence in the first instance, and that his act of colliding with the buggy did not result in any injury to the decedent, and that such act on his part was not the proximate cause of the injury which resulted later to the plaintiff.

I. It is urged by appellant that the defendant was conclusively negligent in passing the buggy upon the right side. This contention is based upon the following ordinance shown to be in force at the time of the accident:

1. NEGLIGENCE: automobile accident: use of streets: violation of law.

Vehicles moving slowly shall keep as close as possible to the curb on the right, allowing more swiftly moving vehicles free passage at their left.

Any person driving or running an automobile or other vehicle . . . along any of the streets of this city shall keep to the righthand side of the street and shall turn to the left on passing around any person or conveyance overtaken going in the same direction.

And upon section 1569 of Code, as follows:

Turning to the Right.  Persons on horseback or vehicles meeting each other on the public roads shall give one-half of the same, turning to the right.  A failure in this regard shall make the delinquent liable for all damages resulting therefrom, together with a fine not exceeding five dollars.

It is urged that the trial court erred because it did not instruct the jury that the defendant was guilty of negligence, as a matter of law, because of the alleged violation of such ordinance and statute.  The rule has been long settled in this state that, where the participant in an accident is upon the wrong side of the street or highway, his presence there is prima facie evidence of negligence, and no more. *Riepe v. Elting,* 89 Iowa, 82; *Cook v. Fogarty,* 103 Iowa, 504; *Carpenter v. Campbell Automobile Co.,* 159 Iowa, 52; *Hubbard v. Bartholomew,* 163 Iowa, 58.

Neither the ordinance nor the statute purports to lay down a hard and fast rule of the road, to be followed under all circumstances.  Circumstances may confront a person, and often do, when due care would require him to avoid or relinquish the side of the street to which he was otherwise entitled.  In such case, he would be required to exercise such due care, and, if he failed to do so, he would be liable for negligence, even though he had planted himself upon the side of the street to which he would ordinarily be entitled.  In all cases, therefore, the ultimate question is: What was required by due care, under all the circumstances confronting the actor at the time?

The effect of the statute and the ordinance is to lay the burden of justification upon the man who was on the wrong

side of the street. But the test to be applied is that of due care under the particular circumstances. There was no error in refusing the requested instruction.

II. Objection is urged to one paragraph of one of the instructions given by the trial court as to the duty of the decedent to exercise care for her own safety. This instruction charged the jury that the negligence of the husband, if any, could not be imputed to the wife, but that the wife was nevertheless required to use ordinary care. The last sentence of the instruction is assailed, and is as follows:

2. SAME: · negligence: required care: instruction.

That is, so far as lay within her power, she was required to exercise the same care as any ordinarily prudent person would be required to exercise under like circumstances.

Special objection is urged to the expression "so far as lay within her power." It is urged that this laid the duty of extraordinary care upon the decedent. We think that a careful reading of the clause will not bear this interpretation. This clause expressly says that she was required to exercise the same care as any ordinarily prudent person. The particular clause objected to implies a possible excuse for a lower standard of care. Its implication is, perhaps, that, if the decedent was under any disability or limitation of body or intellect, it would excuse her from the measure of care required from an ordinary person. There was perhaps no occasion for the qualification, but its tendency was favorable rather than prejudicial to the appellant. If the instruction had required her to exercise all the care that "lay within her power," a different question would be presented. This is the question argued.

III. The twelfth instruction given by the court dealt with the subject of proximate cause. It is conceded to be correct, except as to one paragraph, which was as follows:

If, however, you find that, after such collision, the horse was again under control, and that some other, independent,

and efficient agency intervened and caused the runaway of the horse, you would be justified in finding that the negligence, if any, of the defendant was not the proximate cause of the injury.

The complaint at this point is that it was not sufficient to show that the horse had been brought under control, but that it should also have been shown that he had gotten over his fright, in order to warrant the jury in finding that the act of the defendant was not the proximate cause of the injury. The subject of ''fright'' was dealt with by the court in the preceding paragraph of the same instruction as follows:

3. SAME: negligence: proximate cause.

If you find that defendant was negligent as alleged, and as a result of such negligence the horse became frightened, and such fright of the horse continued down to the time of the runaway to such an extent that without such fright the runaway would not have occurred, and in whole or in part because of such fright the horse ran away and threw Margaret Herdman from the buggy, and injured her, the mere fact, if it be a fact, that some other cause, or the act, negligent or otherwise, of some other person, operated in conjunction with the negligence of the defendant to increase the fright of the horse, and to produce such runaway and injury, would not in itself excuse the defendant from liability.

We think the instruction is not amenable to the criticism made upon it, and that it is applicable to the evidence. If the mere nervousness and fright of the horse after he had stopped and was under control was to continue as a proximate cause for future accidents which might result from such fright and nervousness, then the defendant would be held liable for all such accidents occurring, whether on the same night or on the following day or the following week. If the horse had been held only in temporary control, and by reason of his fright had broken away from such control, a different question would be presented. This is not such a case.

The evidence was undisputed that the horse did not break

away from his control. He started away only at the volition of his driver. Until such time, he was under absolute control. No injury had resulted to the decedent at that time. It rested with her and her husband to say whether they would again undertake to drive the horse upon the street. No one had any control over their conduct. It is undisputed that the defendant offered to take both of them in his automobile to their home; but they declined, on the ground that they felt safe in driving the horse.

IV. Complaint is laid against part of instruction 14. It was as follows:

The evidence shows, without controversy, that after the collision the horse was stopped and under control for a sufficient length of time for Margaret Herdman to have alighted from the buggy, had she elected to do so. If, therefore, you find from the evidence that Margaret Herdman knew and appreciated the dangers incident to the trip home with said horse and buggy, or if, in the exercise of ordinary care, she should have known and appreciated such danger, and disregarding the same she elected to pursue her journey in such manner, you will be justified in finding that she assumed the risk; and in that event the plaintiff cannot recover.

Particular criticism is directed against the use of the expression "assumed the risk." This phrase has a pretty well-defined place in legal phraseology. It is usually used in defining the relations between employer and

4. SAME: assumption of risk: instruction.

employee, and is usually deemed to arise out of contractual relations. We are not disposed to confuse legal terminology by applying the phrase indiscriminately to other cases than those indicated. The use of the phrase, however, in this connection had its pertinence, and was not misleading. The material thing in this part of the instruction was that the jury was instructed that upon the hypothesis stated, "The plaintiff cannot recover." This pronouncement was correct, and it was immaterial whether such conduct as was recited in the hypothesis should be denomi-

nated as assumption of risk or contributory negligence, or whether it should be deemed as the proximate negligence which caused the injury. It should be said here that there is authority to support the trial court in the use of the phrase complained of. *Miner v. Conn. R. Co.*, 153 Mass. 398, (26 N. E. 994); *Deery v. Camden & A. R. Co.*, 163 Pa. 403, (30 Atl. 162); *McGovern v. Railway Co.*, 136 Iowa, 13.

Appellant also complains of the first paragraph above quoted from this instruction. It is urged that the court ought not to have stated that the fact recited therein was "without controversy." We think the instruction is in accord with the evidence at this point. We can find no conflict in the evidence to the effect that the horse was under control and remained under control until the occupants of the buggy of their own volition resumed their journey. Plaintiff's own testimony as a witness is consistent with this instruction.

V. It will be seen from the foregoing that one of the weak places in plaintiff's case was the question of proximate cause. It is a question of grave doubt whether the evidence was sufficient to have sustained a favorable verdict for the plaintiff.

5. SAME: negligence: proximate cause: evidence.

Assuming that the defendant was at fault in causing the collision, the decedent had escaped injury therefrom. For the time being, at least, the danger was over. After a considerable investigation, the defendant left for his home. The decedent and her husband remained. It rested with them to judge whether their horse was sufficiently recovered from his fright to justify the continuance of their journey. The husband alighted from the buggy; the decedent did not. The husband returned to the buggy, and they proceeded on their way.

The relation of the defendant to the accident that happened later was not materially different from what it would have been if the decedent had not been in the buggy when the collision occurred, but with knowledge of the facts had en-

tered the buggy after the horse had been brought under control.

The verdict was for the defendant. The jury necessarily found, therefore, either that the defendant was not guilty of wrongful conduct in causing the collision, or that the collision was not the proximate cause of decedent's injury, or that the decedent was guilty of contributory negligence. The evidence was clearly sufficient to sustain the verdict on any one of these grounds.

On the question of proximate cause, there was evidence that the horse was frightened a second time by another passing automobile.

A number of errors are assigned and argued that bear upon the measure of damages. In the state of the record, we have no need to consider these.

By the undisputed evidence the decedent was seriously injured, and would have been entitled to substantial damages, if the defendant had been liable at all.

We find no prejudicial error in the record, and the judgment is therefore—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.