HERMAN HANSEN, Appellant, v. HARRY KEMMISH, Appellee.

**ANIMALS: Restraint—Violation of Statute—Effect.** The unrestrained
1   presence of a domestic animal upon the public highway generates a presumption that the owner of the animal has been negligent in not restraining the animal from running at large, as commanded by statute; but the owner may show that, in view of all the circumstances, he was not, in fact, negligent. The doctrine of negligence *per se* arising out of the violation of a statute does not here apply. (See Book of Anno., Vol. 1, Sec. 2980.)

**MOTOR VEHICLES: Operation—Insufficient Statutory Lights—Effect.**
2   The operation of an automobile with lights which do not measure up to statutory requirements becomes quite immaterial, in a civil action, if such shortcoming in no manner contributes to the damage.

**Headnote 1:** 3 C. J. p. 97.   **Headnote 2:** 28 Cyc. p. 38.

*Appeal from Harrison District Court.*—O. D. WHEELER, Judge.

APRIL 9, 1926.

THE plaintiff was injured as the result of a collision between his automobile and defendant's boar, which was running at large on the highway, and brings this action for his resulting damage. The court directed a verdict in favor of the defendant, and the plaintiff appeals.—*Reversed.*

*Bolter & Murray,* for appellant.

*Robertson & Havens,* for appellee.

MORLING, J.—The thought of the court in directing the

verdict seems to have been that the plaintiff, at the speed he was going, was himself negligent, because his car was not equipped with proper lights. The plaintiff was driving a Ford car eastwardly at about 7:30 P. M., October 18, 1921. It was starlight, and he had his lights on. He testified:

"I didn't see the hog until the minute I struck it. The hog must have been on the north side of the road. I was watching the road ahead of my car, and all at once the hog stood in front of my place, and I could neither stop nor turn, and I ran into him, and the car was thrown to the left, and upset. * * * On the north side of the road there was a ditch, and some weeds at the side of the ditch,—tall weeds,—sweet clover and some other weeds. There was only one traveled track in this road. This beaten track was towards the north side. My car was traveling in this beaten track. * * * My lights threw a light straight ahead. I saw the head and front shoulders of the hog first. It was facing south. I couldn't tell whether it was moving or not. I thought he was standing perfectly still. I had no time to turn out or stop the car between the time I first saw the hog and the time I struck him. * * * I judge the hog weighed between 350 and 400—a dark red male hog. * * * The lights were good. Q. And you say they were in excellent condition, and giving an excellent light ahead of you, as you went to the place where the accident occurred? A. Yes, sir. The place was about level where we struck the hog. The beaten track of the road was in good condition. There were weeds at the side of the road,—sweet clover and other weeds, anyway two and a half feet high, and other weeds, anyway three feet high. * * * I was looking ahead of my car, watching the road. * * * My seat was on the north side. · * * * Q. Isn't it the fact that the lights on your car were in bad condition at that time? A. No. Q. Were not the brakes of the car in bad condition? A. No, sir. * * * Q. You could see ahead of the car just how far before the collision? A. I don't know—as far as any ordinary car. Q. Well, how many feet ahead of the car could you see in this traveled track in the road? A. About ten or twelve feet, I should judge. Q. Couldn't you see farther than 12 feet ahead of your car in the road at that

time, with the lights? A. It depends on which condition your car sets. Q. In the level road that you have described, at the place of the collision, couldn't you see, with the lights of your car, more than 12 feet ahead of the car? A. I don't think so.''

A witness riding with the plaintiff testified:

''I just saw the hog, and I thinks, 'We are going to hit that hog;' and I didn't have time to say anything, and we hit it. We were traveling around 25 miles per hour at the time. * * * We could see the beaten track. To the north of the beaten track there was a ditch, and it looked to me as though there were some weeds hanging over the ditch. When I first saw the hog, it was coming out of the ditch at the north side of the road, moving south. * * * I was sitting on the south of him, looking off towards the northwest [northeast?] * * * The ditch * * * was probably two feet lower than where it was graded up where we were with the car. I can't say how far we were from the ditch. The hog walked 6 or 8 feet south before the car struck it. I saw the hog from the time it started to come out of the ditch. I saw it when it was back in the ditch. There were no weeds right on the road, to obstruct my view. * * * You didn't say a word? A. I didn't have time. * * * I wouldn't swear we were not going 26 or 27 miles an hour, but I would swear that we were not going over 30 miles an hour. * * * I don't know just how far I could see ahead of the car before we hit it,—I think I could see more than 10 or 12 feet ahead of the car. * * * I would judge, 25 or 30 feet ahead. Q. The lights were not bright on your car at that time, were they? A. They were as bright as most of them.''

One of the defendant's witnesses testified that the light was variable, and the globe not large enough. He said:

''The lights on this car, when you are running steadily at the rate of 25 miles per hour, would give a good light sometimes.''

I. The court ruled that the presence of the boar on the highway made out a prima-facie case of negligence, but ad-

mitted evidence offered by defendant to show the exercise of
care in confining the animal.    The appellant
argues that, under Sections 2312 and 2313, Code
of 1897, defendant was required to restrain the
boar, at his peril.    It has been said that our decisions on the
question whether the violation of a statutory duty is negligence
*per se* are not in harmony.    We will not undertake the task
of discussing them at length, nor the impossible one of formu-
lating a rule for the determination of all questions of this
character.    It may properly be said, we think, that, if a statute
lays down a rule or regulation of conduct specifically designed
for the safety and protection of persons or property, injuries
proximately resulting from its violation to one who, under the
circumstances of the case, is within its purview, and free from
contributory negligence, would be actionable, as for negligence
*per se*.    Such a violation of a positive statutory enactment need
not involve the element of willfulness.    It is of itself negligence.
*Reynolds v. Hindman*, 32 Iowa 146; *Lonergan v. Illinois Cent.
R. Co.*, 87 Iowa 755; *Messenger v. Pate*, 42 Iowa 443; *Burk v.
Creamery Pack. Mfg. Co.*, 126 Iowa 730; *Ives v. Welden*, 114
Iowa 476; *Faatz v. Sullivan*, 199 Iowa 875; *Payne v. C., R. I.
& P. R. Co.*, 44 Iowa 236; *Correll v. B., C. R. & M. R. Co.*, 38
Iowa 120; *Tobey v. Burlington, C. R. & N. R. Co.*, 94 Iowa 256;
*Sala v. Chicago, R. I. & P. R. Co.*, 85 Iowa 678; *Reed v. Chicago,
St. P., M. & O. R. Co.*, 74 Iowa 188; *Girl v. United States R.
Adm.*, 194 Iowa 1382; *Faatz v. Sullivan*, 199 Iowa 875; *Conn v.
May*, 36 Iowa 241; *Thoburn v. Campbell*, 80 Iowa 338.

Cases of another class are illustrated by those holding that
the violation of statutory or municipal regulations constituting
"the law of the road" is *prima facie*, but not conclusively negli-
gence.    *McElhinney v. Knittle*, 199 Iowa 278; *Smith v. Town of
Hudson*, 202 Iowa —; *Carlson v. Meusberger*, 200 Iowa 65;
*Herdman v. Zwart*, 167 Iowa 500.    Generally speaking, the
harm for which the action is brought must be of the kind which
the statute was intended to prevent; and the person injured,
in order to recover, must be within the class which it was in-
tended to protect.    Pollock on The Law of Torts (12th Ed.)
197; *Cohoon v. Chicago, B. & Q. R. Co.*, 90 Iowa 169; *Martin*

*1. ANIMALS: re-straint: viola-tion of statute: effect.*

*v. Chicago, R. I. & P. R. Co.,* 118 Iowa 148; *Lonergan v. Illinois Cent. R. Co.,* 87 Iowa 755. But even though the injury complained of is not within the purview of the statute, the disregard of statutory duty may be a material fact, and evidence of negligence. *Union Pac. R. Co. v. McDonald,* 152 U. S. 262, 283; Pollock on The Law of Torts (12th Ed.) 197; *Georgia Railroad v. Williams,* 74 Ga. 723, quoted in *Lonergan v. Illinois Cent. R. Co.,* 87 Iowa 755, 760.

A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance. *Lonergan v. Illinois Cent. R. Co.,* 87 Iowa 755; *Martin v. Chicago, R. I. & P. R. Co.,* 118 Iowa 148; *Camp v. Chicago, G. W. R. Co.,* 124 Iowa 238; *Girl v. United States R. Adm.,* 194 Iowa 1382.

The first inquiry is necessarily into the meaning and purpose of the statute. The language of that under consideration (Section 2312, Code of 1897) is:

"The owner of any * * * boar * * * shall restrain the same, and any person may take possession of any such animal running at large * * *"

In ascertaining the meaning of this statute, we should consider analogous and connected statutes. Section 2314 declares:

"Swine, sheep and goats at all times * * * shall be restrained from running at large. Animals thus prohibited from running at large, when trespassing on land, or a road adjoining thereto, may be distrained by the owner of such land, and held for damages done by them, * * *"

This section also declares:

"During the time and as required by a police regulation adopted according to law, stock shall be restrained from running at large."

The present statute provides:

"All animals shall be restrained by the owners thereof from running at large." Section 2980, Code of 1924.

Also:

"Animals which are unlawfully running at large on the

highway may be distrained by the owner of the adjoining land * * * '' Section 2984, Code of 1924.

Section 2313, Code of 1897, provided:

''Any animal trespassing upon land fenced as provided by law may be distrained * * * unless it escaped from adjoining land in consequence of the neglect of such landowner to maintain his part of a lawful partition fence.''

Substantially the same provisions are found in Sections 2981, 2982, 2983, Code of 1924.

The statutes then and now define lawful fences, regulate their construction, provide for making them tight, and ''in such condition as shall restrain such sheep or swine.'' Section 2367, Code Supplement, 1913 (Sections 1845 to 1849, Code of 1924).

Fencing depends, to some extent, upon the concurrence of adjoining owners. These very provisions seem to make it clear that the word ''restrain'' is used variably and relatively, and the duty which it denotes varies with the various relations to which the statutes are applicable. In the case of adjoining owners, for instance, the duty and the liability depend upon whether one or both of them have complied with the fence laws. We think that the particular statute involved here, that requiring the owners of certain male animals to restrain them, was designed primarily to protect the owners of the female from the damage that would result from undesired or inferior breeding. With respect to such damage, we have held that the owner of the male is bound, at his peril, to restrain it from running at large, and that the sufficiency of the partition fence is immaterial. *Burleigh & Jackson v. Hines,* 124 Iowa 199. We have also held that one of the purposes of this law is that people may not be exposed to attacks from such animals, while in open places where the public may rightfully go, whether the place has been dedicated to public use or not. *Meier v. Shrunk,* 79 Iowa 17, 21. We have held that the owner of a buck sheep trespassing upon plaintiff's land was liable for damages sustained from its attack, regardless of defendant's negligence and of whether he had notice of the animal's vicious propensities. *Hickey v. Freeman,* 198 Iowa 465. We have

recognized the duty of restraining stock as one existing toward travelers by automobile on the highway. *Strait v. Bartholomew,* 195 Iowa 377; *Stewart v. Wild,* 196 Iowa 678.

Nevertheless, our statutes relating to fencing and to animals grew out of, and primarily were regulatory of, the agricultural and live-stock industry, as a reference to our decisions will demonstrate. We very early adopted the rule applicable to our habits, conditions, and necessities, that cattle were free commoners. The owner was not required to fence them in. *Wagner v. Bissell,* 3 Iowa 396. The owner of cultivated land, in order to recover for their trespassing, had to show that his fence was sufficient to turn stock. *Id.; Frazier v. Nortinus,* 34 Iowa 82. The owner of the stock was not chargeable with negligence, merely in allowing them to run at large. *Haughey v. Hart,* 62 Iowa 96.

The state is still pre-eminently agricultural, and we think that the statutes requiring animals to be restrained have reference primarily to the industry. The males specified in the statute under consideration are essential to such industry. They are not to be put upon the plane of wild animals, ferocious by nature, known to be dangerous to the community, nor, merely from their sex, on the plane of animals known, or which, in the exercise of reasonable care, should be known, to be vicious and dangerous, permitting which to be at large is of itself negligence. If such were the effect of the statute requiring male animals to be restrained, it would be at least difficult to lay down a different rule in the application of the present statute, which requires all animals to be restrained. The fence laws are inseparably involved in at least some of the requirements for restraint. It cannot have been the purpose of the legislature, in making particular provisions prescribing the sufficiency of fences, to make them of no avail in the determination of the question of negligence, at least in the case of animals at large other than the specified males.

As to damages sustained by an adjoining owner who has complied with the fence law, from the trespassing of the stock of his neighbor, who has not, there would be a liability, on the principle earlier adverted to. *Goslar v. Reed,* 189 Iowa 1198.

Limiting our holding to the particular question raised in this case, we are of the opinion that the defendant was *prima facie* negligent in permitting his boar to be at large on the highway; that it was competent for him to show, if he could, that he did in fact exercise reasonable and ordinary care in restraining the animal; that, in the determination of that question, the law requiring him to restrain the animal, the fence laws, the character and habits of the animal, and the measures that defendant took to prevent his escape, as well as all other attendant circumstances, may be taken into consideration; and that the question of negligence in this case is, as it is ordinarily, one of fact, for the jury. *Strait v. Bartholomew,* 195 Iowa 377; *Briscoe v. Alfrey,* 61 Ark. 196 (32 S. W. 505); *Drew v. Gross,* 112 Ohio St. 485 (147 N. E. 757). See *Dyer v. Mudgett,* 118 Me. 267 (107 Atl. 831); *Stuber v. Gannon,* 98 Iowa 228; *Moynahan v. Wheeler,* 117 N. Y. 285 (22 N. E. 702).

There was no error in admitting testimony to show the exercise of due care.

II. The law required the plaintiff's car to display lights sufficient "to reveal any persons, vehicle or substantial object 75 feet ahead of the lamps." Chapter 275, Section 25, Acts

2. MOTOR VEHI-
CLES: opera-
tion: insuffi-
cient statutory
lights: effect.

of the Thirty-eighth General Assembly (Compiled Code of 1919, Section 3068). If there were no statute, the plaintiff would, notwithstanding, have been required to use reasonable care in the equipment and maintenance of his lights. He is still required to exercise such care. We think that compliance with the strict measure of the statutory requirement would not, of itself, necessarily be proof of the exercise of reasonable care. Reasonable care might require more than merely displaying lights sufficient to reveal any person, vehicle, or substantial object 75 feet ahead of the lamps. That is one element only, and the minimum requirement for that element. In the examination of the witnesses, the specific question whether the lights were sufficient to reveal a substantial object 75 feet ahead of them apparently was not in mind. Just what was meant by the testimony as to how many feet ahead of the ear the witness "could see in this traveled track" or "ahead

of the car,'' or what was meant by dependency on ''which con-
dition your car sets,'' is difficult to determine; although it
would seem that the plaintiff's lights did not measure up to
the statutory requirement, and that he was negligent. The
testimony on both sides on retrial will probably be directed to
this specific question. But, if plaintiff was delinquent in this
respect, his negligence, in order to bar his right of recovery,
must have contributed to his injury. *Napier v. Patterson,* 198
Iowa 257, 264; *Gates v. B., C. R. & M. R. Co.,* 39 Iowa 45;
*Tackett v. Taylor County,* 123 Iowa 149; *Burleigh & Jackson
v. Hines,* 124 Iowa 199. He was not bound to anticipate the
presence of the boar on the highway. *Strait v. Bartholomew,*
195 Iowa 377. The boar, when first seen, was moving from
the direction of the weeds and ditch, and was within 6 or 8
feet of, and approaching, the point of collision. What his pre-
vious location was; whether distinctly within the range of the
illumination of proper lights; whether, immediately before he
was observed, he was lying or standing, was still or in motion;
whether he was in the weeds, and visible, invisible, or obscured;
whether he was suddenly and quickly aroused into motion;
whether, in the exercise of ordinary care, the plaintiff, with
proper lights, would have been aware of the presence of a
dangerous situation, is not so shown that it can be said, as
matter of law, that, if plaintiff had had better lights, he could,
by being otherwise in the exercise of reasonable care, have
avoided the accident. The question of contributory negligence
was for the jury.

The judgment is—*Reversed.*

DE GRAFF, C. J., and EVANS, STEVENS, FAVILLE, VERMILION,
and ALBERT, JJ., concur.