ELSIE LATTNER, appellee, v. IMMACULATE CONCEPTION CHURCH, a corporation, appellant.

No. 50902.

(Reported in 121 N.W.2d 639)

Appeal from Linn District Court—CHARLES PENNINGROTH, Judge.

MAY 7, 1963.

Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellant.

Wm. W. Crissman, of Cedar Rapids, for appellee.

GARFIELD, C. J.—Plaintiff, Elsie Lattner, an elderly widow, brought this law action against defendant, Immaculate Conception Church, to recover for serious personal injuries sustained in a fall at the bottom of stairs leading to a basement room in the

church in Cedar Rapids. Defendant has appealed from judgment on jury verdict for plaintiff.

Defendant assigns as error the trial court's refusal to direct a verdict for it on the grounds it was not negligent in any of the respects submitted to the jury and plaintiff was contributorily negligent as a matter of law. Error is also assigned in submitting to the jury each of plaintiff's four specifications of negligence against defendant.

■ In considering the claim defendant was entitled to a directed verdict we give plaintiff's evidence the most favorable construction it will reasonably bear. Rule 344(f)2, Rules of Civil Procedure. Generally questions of negligence and contributory negligence are for the jury; it is only in exceptional cases they may be decided as matters of law. Rule 344(f)10, R. C. P.

Defendant's church building is a large one. The church had a membership in excess of 4000 at the time plaintiff was injured November 11, 1960. The basement room at the entrance to which plaintiff fell was formerly used as a chapel with altar and pews. In 1954 it was remodeled for use of the ladies' circles of the church. The combined circles were known as the Sanctuary Society. The remodeled room was called the Immaculata room. It was used largely for social purposes of the ladies' circles, one of which was St. Elizabeth's Circle. The ladies of this circle ordinarily gathered in the Immaculata room every two weeks, usually to play bridge.

On the day plaintiff fell her sister-in-law, Mrs. Joe Lattner, was hostess for the bridge party of St. Elizabeth's Circle and asked plaintiff to help her out by filling in for an absent member. Plaintiff accepted the invitation and was directed to go to the Immaculata room at 12:30. She was not a member of the circle nor of the Catholic faith. She had filled in at two earlier bridge parties of this same circle at the same place in the preceding July and August. On one of these occasions the same sister-in-law was hostess and on the other it was plaintiff's sister.

Entrance to the Immaculata room was down a flight of 12 stairs leading from an outside door at about sidewalk level near the rear of the building. Just inside this door was a landing

from which a left turn was made to descend the stairs. Each step was 45 inches wide, with 7-inch riser and 12-inch tread, except the bottom step was about 10 inches wider at one end and had a tread of 13½ inches rather than 12.

At the top of the bottom step a solid wood door opened *into* the Immaculata room. As plaintiff descended the stairs the door was closed. The bottom step was thus not visible to her until she opened the door. She testifies that when she opened the door to go into the room she thought the door swung even with the floor. The two previous times she had gone to this room were in real warm weather, the wood door was standing open against one wall of the room and she did not notice it was there.

The light in the stairway as plaintiff descended it was rather dim but she had no trouble seeing her way down the steps. As plaintiff opened the door the light inside the room was very bright. Plaintiff wore trifocal glasses. The ladies of the circle were seated. Plaintiff looked at them, hesitated a moment on the bottom step waiting to greet them and to be greeted, took a step forward, fell and sustained serious permanent injuries.

In February 1955 when the stairs and door into the Immaculata room—except for a sign over the door to which we will later refer—were in substantially the same condition, a member of St. Elizabeth's Circle fell and turned her ankle as she opened the door. Like plaintiff she thought she would be on the floor of the room as she opened the door. She reported the incident to the pastor of the church and told him she thought the condition was dangerous. He said, "Yes, it would be corrected."

It was not unusual for the hostess to invite nonmembers of St. Elizabeth's Circle to fill in for absent members at bridge parties where multiples of four usually play. Sometimes these "subs" were nonmembers of the church or even of the faith. The pastor of the church at the time plaintiff fell testifies as her witness that if her sister-in-law had asked his permission to invite plaintiff to fill in at bridge on November 11 he certainly would have given it. Apparently it was not then customary for the hostess to ask the pastor's permission before extending such an invitation. The pastor would occasionally drop in at circle meetings to greet the ladies.

The foregoing is a sufficient reference to the evidence for the present. Some other facts will be mentioned later.

I. Much of defendant's argument deals with plaintiff's status at the time she was injured. In our view this is not a vital question upon this appeal and does not call for extended discussion.

We have frequently recognized four classes of persons who are injured on property of another: trespasser, bare (or mere) licensee, licensee by express or implied invitation; and invitee. Reasoner v. Chicago, R. I. & P. R. Co., 251 Iowa 506, 510, 101 N.W.2d 739, 741, and citations. See also article, 9 Drake Law Review 119. Defendant does not contend plaintiff was a trespasser and she does not claim she was an invitee. So we are not concerned with whether plaintiff was a trespasser or an invitee. Defendant argues plaintiff was a bare licensee while she claims she was a licensee by express or implied invitation.

The trial court left to the jury the question whether plaintiff was a bare licensee or a licensee by express or implied invitation. The jury was instructed that if plaintiff was a bare licensee defendant owed her no duty to make its property safe or keep it in any particular condition, but if she was a licensee by express or implied invitation it was defendant's duty to use ordinary care not to unreasonably or unnecessarily expose her to danger or to adequately warn her of dangers not obvious or reasonably apparent and those that are hidden or concealed. However, if any such danger is obvious, reasonably apparent or in the exercise of reasonable care should be discovered by such person there is no duty to give any warning.

The instruction seems to be taken largely from language in Mann v. Des Moines Ry. Co., 232 Iowa 1049, 1062–1064, 7 N.W. 2d 45, 53, for which many precedents are cited. Reasoner v. Chicago, R. I. & P. R. Co., supra, repeats the language at pages 510, 511 of 251 Iowa, pages 741, 742 of 101 N.W.2d.

We think it was proper to submit to the jury the question whether plaintiff was a bare licensee or a licensee by invitation. We are not persuaded plaintiff was a bare licensee as a matter of law. The Reasoner opinion, supra, observes: "The difference between a trespasser and a bare licensee is slight. Under certain

conditions the obligation of a property owner as to a bare licen see is slightly more than that to a trespasser."

■ Further, as the appeal is presented, defendant would not be entitled to a directed verdict if plaintiff were a bare licensee. Defendant's argument admits that while it is the rule an owner or occupier of premises has no duty to keep them in reasonably safe condition for a bare licensee, there is an exception to this rule in the case of defects which amount to a trap or pitfall. Mann v. Des Moines Ry. Co., supra, cites several earlier decisions for the proposition an owner or occupier might be liable for injury to a bare licensee if he "knowingly permitted him to enter premises where there were traps or pitfalls or other hidden dangers * * *." (page 1063 of 232 Iowa, page 53 of 7 N.W.2d).

It will be noticed the court's instruction here, above referred to, was more favorable to defendant, as to its liability toward plaintiff if she was a bare licensee, than its admission in argument and the language just quoted indicate it was entitled to.

■ It is our conclusion the jury could find the entrance to the Immaculata room amounted to a trap or pitfall. As previously stated, the closed solid wood door opened into the room. The bottom step was not visible to plaintiff until she opened the door. She believed the bottom of the door was even with the floor of the room inside, rather than with the top of the bottom step. We cannot say a reasonably prudent person had no right to such belief. On plaintiff's two earlier visits to this room the door was standing open against the wall and she had no occasion to notice it. It is unusual for a door to open into such a room at the level of the step rather than the floor. There is evidence the pastor of the church who was in charge of the building was fully aware of the dangerous condition.

We think Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140, supports the conclusion just expressed. There plaintiff fell from a landing a step above a basement floor. She mistook the landing for the floor. Handrails ended above the landing rather than, as she supposed, near the bottom of the stairs. Plaintiff could not see the step-off of seven to eight inches until she reached the landing. Merchandise was displayed on the landing

which also led plaintiff to think she had reached the floor. We held a jury question was created as to whether maintaining this change in floor level, under the circumstances, amounted to a pitfall. See also Holmes v. Gross, 250 Iowa 238, 93 N.W.2d 714, and Lincoln v. Cambridge-Radisson Co., 235 Minn. 20, 49 N.W. 2d 1, which the Warner opinion summarizes with apparent approval.

While of course the facts here differ somewhat from those in Warner v. Hansen, the analogy seems clear. Reasonable minds could find from the evidence here there was as much of a pitfall or hidden danger as confronted Miss Warner. We may add there was a handrail here which ended at what plaintiff supposed was the bottom of the stairs—the door casing.

We have considered the authorities defendant has cited for its contention there was no trap or pitfall. Of course all we hold is the question was for the jury. McNaughton v. Illinois Central Ry. Co., 136 Iowa 177, 178–180, 113 N.W. 844, 845, is the only Iowa case among them. Like some of the other precedents relied upon, it holds a closed door *at the top* of a stairway to a basement does not constitute a trap or pitfall. "Every precaution had been taken, save that of locking it, against its improper use." Apparently the only charge of negligence was leaving the door unlocked. The word "basement" was painted on the door. The women's toilet, which plaintiff intended to enter, was also appropriately designated although this was somewhat obscured from view. We do not regard the case as in point.

Some other precedents called to our attention involve steps or changes in floor level or obstructions which were plainly visible or of which plaintiff knew.

Plaintiff's pleaded specifications of negligence, set out in Division V hereof, clearly alleged defendant maintained a pitfall. It follows defendant was not entitled to a directed verdict on the ground it was not negligent.

II. Defendant contends it was not negligent as a matter of law because of the sign, previously referred to, posted over the door casing at the bottom of the stairs. The sign was 12 by 14 inches, with these words, "Caution—Watch Inside Step—Step Down." It is said this, as a matter of law, was adequate warning

of the alleged dangerous condition. The trial court left to the jury the question whether the sign was such as to warn a reasonably prudent person descending the stairs of the step down to the floor upon opening the door. If it so found, the jury was directed to find for defendant.

■ Incidentally the posting of this sign is evidence, in the nature of an admission against interest, that the condition was dangerous. Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 673, 26 N.W.2d 429, 442, 443.

■ We cannot agree posting this sign, under the facts and circumstances here, afforded adequate warning as a matter of law. The question was properly for the jury. It is true plaintiff said she recalled seeing the sign as she was going down the steps. However, the finding is warranted the sign was not so placed or of such content as to give adequate warning of the existing danger to one about to enter the room. It was not as conspicuous as a sign on the door at eye level or above the knob. A reasonably prudent person might well construe the sign, when the door was closed, as warning of only one step down on opening the door. In fact there were then two steps down—one to the step over which the door was closed and the other from that step to the floor after the door was opened.

We are cited to no authority which supports defendant's contention the posting of this sign entitled it to a directed verdict. Precedents we think are to the contrary include, all supra, Mann v. Des Moines Ry. Co., 232 Iowa 1049, 1073, 7 N.W.2d 45, 58; Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 673, 674, 26 N.W.2d 429, 442, 443; Warner v. Hansen, 251 Iowa 685, 687, 694, 102 N.W.2d 140, 142, 146; Lincoln v. Cambridge-Radisson Co., 235 Minn. 20, 49 N.W.2d 1, 3, cited in Warner v. Hansen.

■ III. Nor was defendant entitled to a directed verdict on the ground plaintiff was contributorily negligent as a matter of law. It is argued she was under a duty to make reasonable use of her sense of sight and it conclusively appears she did not do so. It is true plaintiff did not see the bottom step over which the door opened but thought it swung even with the floor. As previously stated, we cannot say she had no right to such belief as a reasonably prudent person. Nor can we say she necessarily failed to exercise ordinary care in what she did or failed to do.

We have referred in Division I to evidence we think raised a jury question as to whether the entrance to the room amounted to a pitfall. This evidence also bears directly on the issue of plaintiff's freedom from contributory negligence. Such issue here is closely related to that of defendant's primary negligence and depends upon the same reasoning. Warner v. Hansen, supra, 251 Iowa 685, 695, 102 N.W.2d 140, 146. There is also the fact that when plaintiff opened the door her attention was, naturally, at least partly directed toward the ladies of St. Elizabeth's Circle in the brightly lighted room and the anticipated exchange of greetings. Citations at the end of the preceding Division II, other than Warner v. Hansen, also support our conclusion on the contributory negligence question. See, too, language in Atherton v. Hoenig's Grocery, 249 Iowa 50, 55, 86 N.W.2d 252, 255.

We are cited to no Iowa decision which supports defendant's contention on this phase of the case.

 IV. One of plaintiff's four specifications of negligence was defendant's failure to change the door at the bottom of the stairway, which was an exit door from the basement room as defined in section 103.2, Codes, 1958, 1962, so it opened outward from the room, in violation of sections 103.8 and 103.1.

These statutes are in Code chapter 103, entitled "Fire Escapes and Other Means of Escape from Fire." Section 103.2 provides, so far as pertinent here, the word "exit" means a doorway or doorways, or such doorways together with connecting stairways, by means of which occupants may proceed safely from a room to a street.

Section 103.8 requires the entrance and exit doors of all churches and several other designated buildings to open outward. Section 103.1 provides, so far as now applicable, "Every church, * * * club room, * * * and all other structures in which persons congregate from time to time * * * shall be equipped with such * * * means of escape therefrom, as in this chapter provided."

Anyone who violates any of the provisions of law relating to means of escape from fire is subject to a fine (section 103.17).

Defendant assigns error in the submission of this specifi-

cation of negligence to the jury principally on the ground the statutes are designed to protect people from fire hazards, not from falling on stairways. Therefore, it is said, it was error to instruct that a violation of the statutes was prima facie evidence of negligence.

It must be admitted the primary purpose of these statutes appears to be protection from fire hazards. Also that there is much authority for the view the violation of a statute does not amount to negligence unless the plaintiff was a member of the class the statute is designed to protect and the harm is one the enactment is designed to prevent. 38 Am. Jur., Negligence, sections 162, 163, pages 832, 833; 65 C. J. S., Negligence, section 19e(2) and (4), pages 422–424. We are cited to no Iowa decision which holds to this view and our cases are to the contrary.

The leading decision is Hansen v. Kemmish, 201 Iowa 1008, 208 N.W. 277, 45 A. L. R. 498, where plaintiff was injured in a collision between his automobile and defendant's boar, running at large on the highway in.violation of our statute requiring certain male animals to be restrained. The opinion recognizes the statute was designed primarily to protect owners of female animals from damage that would result from undesired or inferior breeding and calls attention to an earlier decision that with respect to such damage the owner of the male is bound at his peril to restrain it from running at large.

The opinion observes (page 1012 of 201 Iowa): "A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance." It goes on to hold defendant was prima facie negligent and the question of his negligence was, as ordinarily, one of fact for the jury.

An earlier precedent, Stewart v. Wild, 196 Iowa 678, 681, 195 N.W. 266, involved a similar question. Plaintiff was injured from a collision of his automobile with defendant's hog, running at large on the highway in violation of statute. The trial court held plaintiff's petition demurrable. The controlling reason for the ruling was "That such statute has no application to the rights of a traveler upon the highway, and that it imposes upon the owner of swine no duty with reference to such highway

travel." We held this view was erroneous and "If the duty be imposed, then a breach of it is actionable if it result proximately in injury to another; and this is equally true whether the duty be imposed by common law or by statute."

Hull v. Bishop-Stoddard Cafeteria, supra, 238 Iowa 650, 683, 26 N.W.2d 429, 447, cites Hansen v. Kemmish, supra, with approval. Ritchie v. Schaefer, 254 Iowa 1107, 120 N.W.2d 444, cites both the Hansen case and Stewart v. Wild, supra, in re-affirming the holding that violation of the statutes there involved is prima facie evidence of negligence. However, plaintiff-appellant's contention, rejected by us, in this recent precedent was that violation of the statute was negligence per se. See also Osborne v. Van Dyke, 113 Iowa 557, 560, 561, 85 N.W. 784, 54 L. R. A. 367.

38 Am. Jur., Negligence, section 162, page 834, states: "According to some authorities, the violation of the statute may be some evidence of negligence, even though the injury complained of as resulting from the violation is not within the purview of the statute [citing Hansen v. Kemmish, supra] or even though the statute was not intended for the benefit of the plaintiff and a violation thereof does not as to him constitute negligence in itself." Like statements for which Hansen v. Kemmish is one of the citations are 65 C. J. S., Negligence, section 19e(2) and (4)(a), pages 423, 424.

There is no merit to defendant's contention that the definition of "exit" found in Code section 103.2, supra, enacted in 1957, does not apply to buildings erected prior thereto. This 1957 amendment added nothing, so far as this case is concerned, to the duties of property owners required by sections 103.8 and 103.1, then in effect. It merely defined what was meant by "exit." Another requirement, not involved here, of the 1957 amendment (second paragraph of section 8, chapter 75, Laws 57th General Assembly) relating to two exits from each story of certain buildings, did not become effective until after December 31, 1957. Whether this provision would apply, after such date, to buildings erected prior thereto is a question not before us.

V. Appellant's remaining assignments, argued very briefly, are that the court erred in submitting to the jury plaintiff's

three specifications of negligence other than the one considered in our last Division IV, based upon alleged violation of statute. These three specifications allege defendant was negligent in b) failing to construct the door opening into the room so it would swing into the room at floor level and when closed would not conceal two steps down into the room; c) failing to construct a ramp from the bottom step of the stairs to the floor level, and d) maintaining the room with hidden and concealed step-offs and pitfalls beyond a closed door opening into the room.

We are not persuaded this was error. Specification d clearly and directly affirmatively charges the negligent maintenance of a pitfall. Specifications b and c, in effect, allege negligent failure to avoid or remedy the pitfall. Of course the jury could find the condition was not a pitfall or that defendant was not negligent in maintaining it. Likewise the jury could find defendant was not negligent in avoiding or remedying the pitfall, if there was one, in the manner alleged. But we think these questions were for the jury. Warner v. Hansen, supra, 251 Iowa 685, 687, 694, 102 N.W.2d 140, 142, 146, lends support to our holding.

We find no reversible error in any respect assigned and argued by defendant.—Affirmed.

All JUSTICES concur except THOMPSON and HAYS, JJ., who concur specially.

THOMPSON, J. (concurring specially)—I agree with the result in the foregoing case and with the reasoning by which it is reached, except as to Division IV. I cannot agree that this specification of negligence should have been submitted. However, as the case is presented to us, I do not find reversible error.

HAYS, J., joins in this special concurrence.