283 F.2d 743
 Daniel Arthur SIMPSON, Appellant,
v.
Will L. TOWNSLEY, Helen Townsley Coogan and Russell T. Townsley, a copartnership, doing business as The Great Bend Daily Tribune, Tribune, Inc., a corporation, The Goldenbelt Truck Lines, Inc., a corporation, and The United States Fidelity and Guaranty Company, a corporation, Appellees.
 No. 6397.
 United States Court of Appeals Tenth Circuit.
 October 28, 1960.
 
 Thomas C. Boone, Hays, Kan. (Nuss & Nuss, Great Bend, Kan., were with him on the brief), for appellant.
 Richard C. Hite, Wichita, Kan. (Robert E. Russell, Topeka, Kan., Warren H. Kopke, Great Bend, Kan., Marvin Thompson, Russell, Kan., W. A. Kahrs, Robert H. Nelson and H. W. Fanning, Wichita, Kan., were with him on the brief), for appellees.
 Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 On November 3, 1957, a collision occurred between a motor vehicle being driven by Daniel Arthur Simpson[1] and a motor vehicle being driven by Meda Oneida Smith,[2] near the intersection of Susank-Galatia Road and U. S. Highway 281 in the State of Kansas, resulting in injuries to Simpson. Thereafter, on December 30, 1958, Simpson and Rosalie Simpson, his wife, executed and acknowledged a writing entitled "covenant not to sue" running to Smith and her husband, Elmer Smith, in which the Simpsons covenanted, in consideration of $10,000 paid to them by Smith and Elmer Smith, "to forever refrain from instituting, pressing or in any way aiding any claim, demand, action, or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereinafter to grow out of an accident which happened to * * * Simpson on or about the 3rd day of November, 1957, at or near the intersection of Susank-Galatia Road with U. S. 281" and agreed to hold the Smiths harmless "from any damages to ourselves resulting or to result from said accident."
 
 
 2
 In driving such motor vehicle, Smith, at the time of the collision, was acting as the agent, servant, or employee of Will L. Townsley, Helen Townsley Coogan, and Russell T. Townsley, a copartnership doing business as The Great Bend Daily Tribune, Tribune, Inc., a corporation,[3] and the Goldenbelt Truck Lines, Inc.[4]
 
 
 3
 On December 30, 1958, the Simpsons entered into a written agreement with the Smiths and the Farm Bureau Mutual Insurance Company, Inc.,[5] in which for a recited consideration of $10,000 paid to them by the Smiths and the Insurance Company, the Simpsons agreed to hold the Smiths and the Insurance Company "harmless from any further claim in respect to Policy No. 12788 in said insurance company" and to "release and relinquish all rights to collect from" the Smiths and the Insurance Company "under the above mentioned policy" and further agreed "in the event of any further claim * * * to defend any suit or go to any trouble or expense to protect the" Smiths and the Insurance Company "from any further claim under the above referred to policy, and to assume full responsibility for any necessary further payment or compromise of such claims." The agreement further provided that in the event the policy of insurance referred to above should be held to be primary and a policy of liability insurance covering the Tribune partnership and corporation secondary, and in the event the Insurance Company should be held liable to the extent of its policy for the payment of a judgment recovered by the Simpsons against such Tribune partnership and corporation, then the Simpsons would allow the Tribune partnership and corporation a credit on any judgment obtained against them by the Simpsons up to the sum of $15,000.
 
 
 4
 The agreement to hold harmless further provided that in the event "any claim, demand, action or cause of action for damages or for breach of contract" should be brought against Smith and Elmer Smith, or the Insurance Company "by any of the other defendants named" in a case pending in the District Court of Barton County, Kansas, "entitled Alfred R. and Hulda C. Wilson, as parents, guardians and next of kin of Alfred Leroy Wilson, deceased, versus" the Tribune partnership and corporation and Smith "by reason of any of the provisions of policy No. 12788," that the Simpsons would "protect and hold harmless" Smith, Elmer Smith, and the Insurance Company "from any damages by reason of said demand, action, suit or judgment that might be brought or obtained by any or all of said other defendants."
 
 
 5
 After the execution of such covenant not to sue and agreement to hold harmless, Simpson filed an action in the United States District Court for the District of Kansas against the Tribune partnership and corporation, Goldenbelt, and the United States Fidelity and Guaranty Company. In his complaint Simpson alleged the occurrence of the collision and that at the time of the collision Smith was driving such motor vehicle as the agent, servant, and employee of the Tribune partnership and corporation and Goldenbelt and was acting in the course of her employment as such agent, servant, and employee. In his complaint Simpson further alleged specific acts of negligence on the part of Smith, that the collision was the direct and proximate result of the negligence and want of care of Smith, and that her negligence is imputed to the Tribune partnership and corporation and Goldenbelt.
 
 
 6
 In their amended answer the Tribune partnership and corporation and Goldenbelt set up the covenant not to sue and alleged that it was a full satisfaction and a complete defense to Simpson's alleged cause of action against them.
 
 
 7
 In his amended reply Simpson set up the agreement to hold harmless and alleged that it reserved Simpson's right to proceed against the Tribune partnership and corporation and Goldenbelt.
 
 
 8
 The Tribune partnership and corporation and Goldenbelt filed a motion for summary judgment. The motion was sustained and from a judgment in favor of the defendants below, Simpson has appealed.
 
 
 9
 It is clear that Simpson's alleged cause of action is based on the doctrine of respondeat superior. His complaint contains no allegations of negligence on the part of the Tribune partnership, or corporation, or Goldenbelt. Rather, it alleges that "the negligence of Meda Oneida Smith is likewise the negligence of the defendants * * *."
 
 
 10
 Under the law of Kansas there is no distinction between the liability of a principal for the tortious acts of his agent and the liability of a master for the tortious acts of his servant. In both relationships the liability is grounded upon the doctrine of respondeat superior. Under that doctrine the liability of the master to a third person for injuries inflicted by a servant in the course of his employment is derivative and secondary and that of the servant is primary. Where the liability of the master is not predicated on any delict on his part, but solely on his secondary liability under the doctrine of respondeat superior, the exoneration of the servant removes the foundation upon which to impute negligence to the master.[6]
 
 
 11
 Moreover, under the law of Kansas, while a master whose liability is predicated solely on the doctrine of respondeat superior and not on any wrong on his part may be sued jointly with his servant for a tort committed by the latter within the scope of his employment, they are not joint tort feasors in the sense they are equal wrongdoers. Where a master becomes liable to a third person for personal injuries caused solely by the act of his servant, under the doctrine of respondeat superior, and is required to respond to such third person in damages by reason of such liability, he will be subrogated to the rights of the injured third person and may recover over from his servant who is primarily liable.[7] In distinguishing the nature of the liability of the servant and of the master, in Jacobson v. Parrill, 186 Kan. 467, 351 P.2d 194, 199, the Kansas Supreme Court said:
 
 
 12
 "Basically, there is no distinction to be drawn between the liability of a principal for the tortious acts of his agent and the liability of a master for the tortious acts of his servant. While reference here is made only to the relation of master and servant, it also pertains to the relation of principal and agent. In either instance, the liability is grounded upon the doctrine of respondeat superior (2 Am.Jur., Agency, § 359, p. 278; 77 C.J.S. Respondeat Superior pp. 317-320). It has been held that under that doctrine the liability of the master to a third person for injuries inflicted by a servant in the course of his employment and within the scope of his authority, is derivative and secondary, while that of the servant is primary, and absent any delict of the master other than through the servant, the exoneration of the servant removes the foundation upon which to impute negligence to the master * * *."
 
 
 13
 Counsel for Simpson assert that the covenant not to sue did not constitute a release or exoneration of Smith and that the separate agreement to hold harmless constituted a reservation of right to sue the Tribune partnership and corporation and Goldenbelt. They rely on Milwaukee Insurance Co. v. Gas Service Co., 185 Kan. 604, 347 P.2d 394, 399. In that case, Ritchie Brothers Construction Company was engaged in preparing a street for paving in Wichita, Kansas. In carrying out such work, equipment being operated by employees of the Construction Company contacted and broke a gas line located below the surface of such street. An employee of the Construction Company promptly called the Gas Company and notified it that its gas line had been severed and that gas "was flowing pretty bad."
 
 
 14
 The accident happened about 1:30 p. m. and at approximately 2:30 p. m. an explosion occurred which partially destroyed the home of Eugene W. and Alma McDonald. The fire department arrived on the scene about 10 or 15 minutes after the explosion and the Gas Company's employees arrived a few minutes later.
 
 
 15
 The Milwaukee Insurance Company had issued its policy of fire insurance to the McDonalds and paid to the McDonalds on account of the loss caused by the explosion $5,026.90 and received, in the words of the opinion, "a subrogation receipt." Thereafter, the McDonalds, for a recited consideration of $2,513.45, entered into a covenant not to sue with the Construction Company in substantially the language of the covenant not to sue in the instant case. The Milwaukee Insurance Company brought an action against the Gas Company to recover one-half the amount paid its assureds for the loss caused by the gas explosion, alleging negligence on the part of the Gas Company in failing to bury its gas mains and service lines at a sufficient depth and in failing to take prompt corrective action when notified that gas was escaping from its lines. At the conclusion of plaintiff's evidence, the Gas Company demurred thereto on the ground, among others, that the "plaintiff had made a settlement with the joint tort feasor and was therefore barred from maintaining the action." In deciding that issue, the court held that the Gas Company and the Construction Company were not joint tort feasors, for the reason that if both were guilty of negligence, the act of each was an independent or successive act. In the opinion the court said:
 
 
 16
 "Where the independent tortious acts of two persons combine to produce an injury indivisible in its nature, either tort-feasor may be held for the entire damage — not because he is responsible for the act of the other, but because his own act is regarded in law as a cause of the injury. In cases of such independent * * * or successive torts, the release of one wrongdoer does not release the other. * * *
 
 
 17
 "* * * When the wrongful act is not done jointly by the persons from whom compensation is sought but is the deed of one or the other and not of both, we are unable to perceive on what principle a settlement with and discharge of one affects the cause of action against the other."
 
 
 18
 In construing the covenant not to sue, the court held that the McDonalds intended that the covenant not to sue should apply to no other person than the Construction Company.
 
 
 19
 We think that case is clearly distinguishable on the facts from the instant case. That case involved alleged separate and independent tortious acts by the Construction Company and the Gas Company. In the event the McDonalds recovered damages from one of such tort feasors, no right of contribution against the other tort feasor arose. Here, in the event of a recovery by Simpson of damages from one or more of Smith's employers, caused by Smith's tortious act, such employer or employers would thereupon have an action over against Smith for such damages paid by them. The covenant not to sue, standing alone and without the provision to save harmless, would have protected Smith against any action brought by Simpson against her. But, if it went no farther than that and afforded no protection to Smith against a recovery of damages by Simpson against Smith's employers and an action over by such employers against Smith, it would be wholly abortive, we think, of its intended object and purpose. We think it clear the parties did not intend merely to relieve Smith of her direct liability to Simpson and leave her liable indirectly to Simpson for any additional damages which Simpson might recover against her employers. If the covenant not to sue were thus narrowly construed, the payment made as consideration therefor would amount to no more than a credit on the amount of damages for which Simpson might ultimately recover a judgment and Smith would remain legally liable for the remainder. Accordingly, we think that phrase in the covenant not to sue in the instant case, "we hereby agree to hold * * * Smith and Meda Oneida Smith harmless from any damages to ourselves resulting from or to result from said accident," because of the material distinction between the facts in the instant case and the facts in the Milwaukee Insurance Company case, has an entirely different connotation and purpose and was intended to protect Smith against liability, direct or indirect, for damages resulting or to result to Simpson from such accident.
 
 
 20
 Accordingly, we conclude that the covenant not to sue and agreement to hold harmless constituted a complete exoneration of Smith and removed any foundation upon which to impute negligence to Smith's employers.
 
 
 21
 Neither do we think the separate agreement to hold harmless militates against the construction we have placed on the covenant not to sue. Such separate agreement does not expressly or impliedly manifest an intent on the part of Simpson to reserve a right to sue Smith's employers. Obviously, it was merely an agreement required by the Insurance Company, as a condition of the settlement, to insure it against any possible claim of liability by Simpson or others on its policy of insurance.
 
 
 22
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Hereinafter referred to as Simpson
 
 
 [2]
 Hereinafter referred to as Smith
 
 
 [3]
 Hereinafter referred to as the Tribune partnership and corporation
 
 
 [4]
 Hereinafter referred to as Goldenbelt
 
 
 [5]
 Hereinafter called the Insurance Company
 
 
 [6]
 Jacobson v. Parrill, 186 Kan. 467, 351 P.2d 194, 199
 
 
 [7]
 Fenly v. Revell, 170 Kan. 705, 228 P.2d 905, 909; Jacobson v. Parrill, 186 Kan. 467, 351 P.2d 194, 199