**ESTATE of Donald BRUCE, Kenneth Bruce, Executor. Plaintiff,**

v.

**B. C. D., INC., and Ezra Miller, d/b/a Kalona Motor Leasing, Defendants.**

**B. C. D., INC., and Ezra Miller, d/b/a Kalona Motor Leasing, Third-Party Plaintiffs,**

v.

**Earl R. HALL, Third-Party Defendant.**

**Earl R. HALL, Cross-claimant,**

v.

**ESTATE of Donald BRUCE, Kenneth Bruce, Executor, Defendant to Cross-claim.**

**Civ. No. 73–7–W.**

United States District Court, S. D. Iowa, W. D.

April 7, 1975.

Supplemental Order June 11, 1975.

**158**

Richard G. Davidson, Clarinda, Iowa, for estate of Donald Bruce.

Joseph M. Bauer, of Connolly & Connolly, Council Bluffs, Iowa, for B.C.D., Inc.

G. William Smits, Jack W. Peters, of Johnson, Stuart, Tinley, Peters & Thorn, Council Bluffs, Iowa, for Ezra Miller, d/b/a Kalona Motor Leasing.

Peter J. Peters, Dennis M. Gray, of Peters, Campbell & Pearson, Council Bluffs, Iowa, for Earl R. Hall.

## ORDER

HANSON, Chief Judge.

This Order will address motions for summary judgment filed in this cause by defendants B.C.D., Inc. (BCD) and Ezra Miller, who does business as Kalona Motor Leasing.

This cause of action arose out of a rear-end auto collision in Glenwood, Iowa on February 8, 1972. Plaintiff's pickup truck was struck from the rear by a pickup driven by Earl Hall, who is alleged to be an agent of the defendant BCD.[1] BCD has no other connection to the accident. Defendant Ezra Miller is the owner of the truck which was leased to BCD at the time of the accident. Prior to the institution of this lawsuit the plaintiff entered into the following agreement with the driver, Hall:

### COVENANT NOT TO SUE

THIS AGREEMENT made this 26th day of September, 1972, between Donald Bruce and Earl R. Hall, and

WHEREAS, Donald Bruce was injured in an accident in Glenwood, Iowa, on the 8th day of February, 1972, and Donald Bruce claims on his own behalf that Earl R. Hall was responsible for the injury of Donald Bruce, and

[1]. For purposes of this motion, it will be assumed that Hall is BCD's agent. If he were not, BCD would not be liable for his acts, and its motion for summary judgment would have to be granted.

WHEREAS, Donald Bruce is about to commence suit against Earl R. Hall, and

WHEREAS, Earl R. Hall claims that he is under no legal obligation or liability to Donald Bruce by reason of negligence and specifically asserts that the proximate cause of the accident was the negligence of Donald Bruce, and

WHEREAS, Earl R. Hall is desirous of avoiding the expense of defending any action that might be brought against him, or subsequently any individual, firm or corporation that might defend on his behalf, and

WHEREAS, Earl R. Hall is desirous of avoiding the expense of suit, as well as the obvious delays in appeal and claims against third parties, and

WHEREAS, Earl R. Hall denies any obligation to any parties involved in the motor vehicle occurring in Glenwood, Iowa, on February 2, 1972,

NOW, THEREFORE, it is agreed by the said Donald Bruce, in consideration of the sum of $10,500.00 to him in hand paid by Earl R. Hall, receipt of which is hereby acknowledged, the said Donald Bruce will not institute, bring, or commence any action at law or in equity, or any other civil proceedings in any Court of the United States, or any State thereof, for any injuries, death claims, or damages that may have been sustained by Donald Bruce as an individual, or any person, firm, or corporation claiming by, through, or under him, on account of the alleged negligence of Earl R. Hall and the accident allegedly resulting therefrom, on February 2, 1972, at Glenwood, Iowa.

AND, it is further agreed by and between the parties that should there by (sic) any actions against Earl R. Hall, or any person, firm, or corporation for and on his behalf, as a result of the injury to Donald Bruce, said Donald Bruce will hold harmless and indemnify Earl R. Hall. This hold harmless clause shall also include contribution, Court costs, and reasonable Attorney fees, to the extent that said contribution, Court costs, and reasonable Attorney fees are applicable against Donald Bruce, or his representatives,

AND, it is further understood and agreed that this agreement is not to be construed as a release of said Donald Bruce, by Earl R. Hall, but is and is to be construed to be a covenant not to sue only.

IN WITNESS WHEREOF, the said Donald Bruce has hereafter set his hand this 26th day of Sepetmber, 1972.[2]

The document was signed by Donald Bruce, and notarized.

Approximately six months after the signing of the covenant, Bruce brought suit against BCD, as Hall's principal, and Miller, as the vehicle owner. The suit asserts five particulars of negligence and prays for $56,000 in damages. Both defendants answered, invoking the plaintiff's covenant with Hall as a defense. Subsequent thereto, Earl Hall was impleaded as a third-party defendant by both defendant BCD and defendant Miller. Hall then filed a cross-claim against plaintiff Bruce,

2. On its face, the covenant reveals two discrepancies. The date of the accident is referred to in one instance as occurring on February 8, 1972, and in two other places as occurring on February 2, 1972. The references to February 2, 1972 are a clerical error; no party has ever disputed the fact that the accident in question happened on February 8, 1972. Further, in the paragraph stating that the agreement is not to be construed as a release of Bruce by Hall, the names of the parties are transposed. It is plaintiff Bruce who would be concerned over whether his covenant had "released" the payor. The parties do not dispute this construction. *See* Affidavit of Ralph R. Summa, filed on February 14, 1975.

Given the clerical nature of these discrepancies, the covenant itself presents no factual issues which would bar summary judgment.

asserting a claim for indemnification from the third-party plaintiffs' claims against him by invoking the "hold harmless" clause of the covenant.

Defendants BCD and Miller have filed separate summary judgment motions, seeking to have Bruce's claims against them dismissed. Both assert that Bruce's "release" of Hall operates to exonerate them from liability.

### The BCD Summary Judgment Motion

Defendant BCD asserts that the covenant entered into between Bruce and Hall operates to exonerate BCD, as Hall's employer and principal, from liability to Bruce. BCD's motion raises an issue of first impression in Iowa, and this Court concludes that the Iowa Supreme Court would adopt the rule of law argued by BCD. Thus, this defendant's motion for summary judgment must be granted.

■ The key issue raised by this motion involves the effect of the covenant entered into between Bruce and Hall on the liability of Hall's principal, BCD. It is conceded that BCD's sole connection to the plaintiff in his lawsuit is its position as Hall's employer. The relevant Iowa law regarding certain relationships between an employer and its employees is well established. Iowa has long recognized that:

> The liability of the employer for the negligent acts of his servant is based upon the familiar doctrine of *respondeat superior*. Unless the servant is liable, there can be no liability on the part of the master. This has been repeatedly held in cases where both were sued, and the verdict was against the employer only. White v. [International] Text-Book Co., 150 Iowa, 27, 129 N.W. 338; Dunshee v. Standard Oil Co., 165 Iowa [625], 627, 146 N.W. 830; Hobbs v. [Illinois Cent.] Railroad Co., 171 Iowa, 624, 152 N.W. 40, L.R.A.1917E, 1023; Arnett v. [Illinois Cent.] Railroad Co., 188 Iowa, 540, 176 N.W.

322. Where the only negligence alleged against the employer is that of the servant or employé, the former is not liable as a joint wrongdoer, as he did nothing, save through the employé; but his liability arises because of his responsibility for the act of his servant. As said in Hobbs v. [Illinois Cent.] Railroad Co., supra:

> "Where the real actor (who is none the less liable personally because acting for another) is not guilty, it necessarily follows that the party for whom he acted cannot be."

> Moreover, where the employer is held liable for the negligent act of his servant, he can recover over against the servant. Hobbs v. [Illinois Cent.] Railroad Co., supra; 26 Cyc. 1545.

Maine v. Maine & Sons Co., 198 Iowa 1278, 1281, 201 N.W. 20 (1924). *See also* Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L.Rev. 517, 519 (1952); Dairyland Insurance Co. v. Concrete Products Co., 203 N.W.2d 558, 564 (Iowa 1973). The ability of an employer to invoke the protection of a covenant not to sue which runs in favor of his employee is not so settled in Iowa. The Iowa Supreme Court has dealt with issues involving releases or covenants not to sue in the context of joint tortfeasors on numerous past occasions. *See* Dungy v. Benda, 251 Iowa 627, 102 N.W.2d 170 (1960); Pedersen v. Bring, 254 Iowa 288, 117 N.W.2d 509 (1962); Johnson v. Harnish, 259 Iowa 1090, 147 N.W.2d 11 (1966); *cf.* Bolton v. Zeigler, 111 F.Supp. 516 (N.D. Iowa 1953). The rules of those cases are not fully applicable outside the joint tortfeasor context, however. As stated in a recent Iowa Supreme Court case involving joint obligors,

> We should note the liability alleged against Peterson is in part at least for Peterson's direct action. Where the co-obligor is liable vicariously (that is, as principal for the acts of his agent), additional problems are raised when a release or covenant not to sue is given to the agent or other

source of liability insofar as vicarious liability is concerned. We do not resolve these problems in this opinion. *Cf.* Annotations, 20 A.L.R.2d 1044; 92 A.L.R.2d 533 and IV Corbin on Contracts, §§ 933 *et seq.*

> Community S.D. of Postville v. Gordon N. Peterson, Inc., 176 N.W.2d 169, 175 (1970).

The question left open in *Postville* is squarely before the Court today.

■ Initially, it must be stressed that the document in issue consists of more than a simple agreement not to sue. It provides that "should there by (sic) any actions against Earl R. Hall, or any person, firm, or corporation for and on his behalf, as a result of the injury to Donald Bruce, said Donald Bruce will hold harmless and indemnify Earl R. Hall." On the basis of this clause, defendant BCD argues that the covenant must be considered a full satisfaction of any claims which do not arise independently of Hall's asserted negligence. BCD argues that unless this construction is adopted, a futile circuity of litigation will result. Specifically, if Bruce were to recover against BCD, BCD could then recover against Hall, its agent, since BCD's liability is merely vicarious. Upon such a recovery against Hall, Hall could invoke the hold harmless clause against Bruce, and the circuit would be complete.

The defendant's position has a logical appeal, and is supported by Professor Corbin:

> An employer may be liable for a tortious injury caused by his employee, solely by the doctrine of respondeat superior, as the best method of carrying risks and compensating the injured. The employer may then be held to have a right to full indemnity against the active wrongdoer. In such a case, a settlement by which the injured party covenants with the active wrongdoer that he shall not have to pay anything more on account of the injury might be held, by analogy with contract suretyship, to operate as a

complete discharge of the employer. Such should certainly be the holding, if the injured party covenants with the active wrongdoer that he will not thereafter bring any action or press any claim, either against the convenantee or against anyone else. If, in breach of this covenant, the injured party brings suit against the employer, the latter should have a defense as a third party beneficiary; and the covenantee himself should be able to enforce the covenant specifically by injunction. IV Corbin on Contracts § 932 at 747–48.

In addition, a number of recent decisions have adopted this view. In Simpson v. Townsley, 283 F.2d 743 (10th Cir. 1960), a nearly identical factual situation was present. There an action was brought against an employer, whose sole liability was by virtue of respondeat superior; its employee had injured the plaintiff in an automobile accident. Prior to suit, the plaintiff had entered into a covenant not to sue with the employee; the covenant also contained a hold harmless clause. The circuit court applied Kansas law, which gives a principal a right over against his agent for liability based solely on respondeat superior. On this basis, the court held that the agreement, by completely exonerating the employee, served to exonerate the employer as well. 283 F.2d at 747–48.

A similar result was reached by the Nebraska Supreme Court in Dickey v. Estate of Meier, 188 Neb. 420, 197 N.W. 2d 385 (1972). In *Dickey* the injured plaintiff released an employee from further liability for his acts, and brought suit against his employer. The release contained a hold harmless clause, but specifically sought to reserve the right to sue the employer. The court rejected plaintiff's attempts to recover against the employer, stating:

> We hold that in a tort action based exclusively on the alleged negligence of an employee or agent, a valid release of that employee-agent releases

the employer or principal from liability, even though the release specifically reserves all claims against the employer-principal. *See* Max v. Spaeth, 349 S.W.2d 1 (Mo.); Bacon v. United States, 321 F.2d 880 (8th Cir.). Both courts held in those cases: "The master's liability under the doctrine of respondeat superior is based not on his own misdeeds but those of this servant, and 'therefore, when the servant is not liable, the master for whom he was acting at the time should not be liable.' It matters little how the servant was released from liability; as long as he is free from harm, it appears to us that his master should also be held blameless." 197 N.W.2d at 388.

Similar holdings have been made in Seaboard Airline R.R. Co. v. Coastal Distributing Co., 273 F.Supp. 340 (D.S.C. 1967); Terry v. Memphis Stone & Gravel Co., 222 F.2d 652 (6th Cir. 1955) (applying Tennessee law); Holcomb v. Flavin, 34 Ill.2d 558, 216 N.E.2d 811 (1966). *See generally* Annot., 92 A.L.R.2d 533 (1963). The plaintiff has not urged any cases upon this Court which persuasively challenge the correctness of this rule of law. Therefore, it is the conclusion of this Court that the Iowa Supreme Court, *if faced with this issue, would resolve it by adopting the view exemplified by the Dickey and Simpson decisions.*

Applying that analysis to this case, defendant BCD's motion for summary judgment must be granted. The validity of the covenant not to sue with its hold harmless clause has never been contested. Further, there is no question that the sole liability of BCD lies by way of respondeat superior; this is not a joint tortfeasor situation. Under these facts, the agreement of Bruce to exonerate and hold harmless Hall operates to exonerate his employer, BCD.

### The Ezra Miller Summary Judgment Motion

Ezra Miller, d/b/a Kalona Motor Leasing, was the owner of the truck driven by Earl Hall at the time of its collision with the vehicle of Donald Bruce. Miller's liability to the plaintiff is premised on Iowa's motor vehicle owner's liability statute, which states:

> In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage. § 321.493, Code of Iowa (1973).

No issue is raised as to Miller's consent or ownership of the vehicle, which was leased to BCD at the time of the accident. Rather, the issue boils down to whether the common law doctrine of respondeat superior-related indemnity which operated to exonerate BCD upon Hall's exoneration is equally applicable to Miller.

The fact that defendant Miller's liability derives from the Iowa consent statute raises the question to this Court of whether Miller's relationship to Hall is identical (for purposes of the motion) to BCD's relationship to Hall. Defendant Miller's support for his motion is based almost solely on the cases cited *supra,* where the employer-employee relationship was present. Neither party has supplied the Court with any Iowa cases where a vehicle owner's ability to seek indemnity from his driver was discussed. The Court deems that this distinction is one which at least should be briefed prior to its ruling, for the *Dickey* rationale relied on herein will only apply to Miller if Iowa law will allow him to seek indemnity against Hall.

Accordingly, it is ordered that the parties are given twenty (20) days from the receipt of this Order to brief the issue of an Iowa vehicle owner's ability to seek indemnity from his driver.

It is further ordered that the motion for summary judgment of defendant BCD, Inc., is hereby sustained.

### SUPPLEMENTAL ORDER

This Order supplements an Order of April 7, 1975, which addressed the defendants' summary judgment motions in

this lawsuit. The prior Order granted the motion of defendant BCD, holding that a covenant not to sue which effectively released an employee also operated to release his employer, where the employer's sole liability is by virtue of *respondeat superior*. Additional time was given to the remaining parties to further brief the issues of whether the same considerations apply to a suit against a vehicle owner where his driver has been effectively released. Briefs have been filed by both parties, and the Court now addresses the summary judgment motion of Ezra Miller, the vehicle owner.

■ As this Court has previously indicated, resolution of this issue hinges upon whether a vehicle owner held liable for the negligence of his driver by § 321.-493 of the Iowa Code can thereafter seek indemnity from that driver. The Court's research has disclosed no Iowa cases holding squarely on this point. The following law review commentary, made in 1952, is still pertinent:

> The Iowa automobile 'consent statute' makes the owner of a car liable for damages caused by the negligence of one driving it with the owner's consent. An owner held liable under this statute, but without any personal fault, should be able to recover over from the negligent driver. No cases have been found on the point. The dearth of cases is probably explained by the fact that most borrowers of cars are relatives or friends whom the owner would not want to sue, or else are not financially responsible. The more recent Iowa cases hold that the statute does not create a strict agency relationship. This may weaken somewhat the holding of the court in the much-criticized case of Secured Finance Co. v. Chicago, R. I. & P. Ry., that the statute creates an agency relationship, making it necessary to impute the contributory negligence of the driver back to the owner so as to bar the owner's action against a negligent third person for property damages to

his car. However, this change in attitude toward the statute would have no effect on the right to indemnity, since that right stems from the lack of personal fault on the part of the owner and not from the existence of a true agency relationship. Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L.Rev. 517, 521 (1952) (Citations omitted.)

The commentator's approach is consistent with the Iowa indemnity rule that "one who is liable only by reason of a duty imposed by law for the consequences of another's negligence may recover over against the active perpetrator of the wrong." Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501, 506 (1951). *See also* Chicago & Northwestern Ry. Co. v. Chicago, R. I. & P. R. Co., 179 F.Supp. 33, 58–59 (N.D. Iowa 1959), affd. 280 F.2d 110 (8th Cir. 1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1961); Peters v. Lyons, 168 N.W.2d 759, 766 (Iowa 1969); *cf.* Hawkeye-Security Insurance Co. v. Ford Motor Co., 174 N.W.2d 672, 681 (Iowa 1970).

Indeed, dictum in a few Iowa cases has endorsed allowing a vehicle owner such a right of indemnity. *See, e. g.,* Federated Mutual Implement and Hardware Insurance Co. v. Dunkelberger, 172 N.W. 2d 137, 141–42 (1969); Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303, 308 (1966); Iowa Home Mutual Casualty Co. v. Farmers Mutual Hail Insurance Co., 247 Iowa 183, 73 N.W.2d 22, 26 (1955). Dictum to the same effect is found in Judge Graven's decision in Denver-Chicago Trucking Co. v. Lindeman, 73 F.Supp. 925 (N.D.Iowa 1947):

> It is admitted by the defendant (the owner) in his pleadings that Walter Long was driving the defendant's tractor-trailer as an employee of the defendant and with the consent of the defendant. Thus, liability for any negligence of Walter Long in operating the tractor-trailer at the time in

question could be imposed upon the defendant either by the master-servant relationship or by virtue of the statute referred to. (§ 321.493) It is the general rule that a servant is liable to his master for damages which the master has been compelled to pay to third persons because of the negligence of the servant, where the master himself is not at fault. . . . In the present case it is not claimed that there was any personal negligence on the part of the defendant. *It is believed that whether the liability of the defendant in the present case is predicated upon the master-servant relationship or upon the statute, that the defendant had the right to recover from Walter Long or his estate whatever damages the defendant was compelled to pay the plaintiff because of the collision.* (Citations omitted; emphasis added). 73 F.Supp. at 933.

*See also* Furnish, Distributing Tort Liability: Contribution and Indemnity in Iowa. 52 Iowa L.Rev. 31, 45 (1966).

While supported only by dictum in Iowa, the ability of a statutorily-liable owner otherwise free of liability to be indemnified by his negligent driver is clearly supported by direct holdings in other states. *See, e. g.,* Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355 (1954):

> We therefore hold that, where the owner of an automobile has become liable to a third person injured by one to whom the owner has granted permission to drive his car solely by virtue of the Financial Responsibility Act, such owner is entitled to recover indemnity from the operator of the car in the absence of any active negligence chargeable to the owner. 63 N.W.2d at 360.

*See also* cases cited in Annot., 43 A.L.R. 2d 865 (1955); 42 C.J.S. Indemnity § 21 (1944).

■ Plaintiff's argument against allowing indemnity to vehicle owners is that § 321.493 allows a driver and owner to be held jointly and severally liable. From this, plaintiff asserts that an owner might be able to seek contribution from his driver, but not indemnity. The Court cannot agree. Under the facts of this case, Miller, the owner, had no connection with the accident other than ownership of the vehicle. No basis exists for his liability other than § 321.493. Therefore, under the Iowa cases previously cited, this presents a classic indemnity situation. Liability will be shifted, not shared. Defendant Miller did not participate in the events which led to Bruce's alleged injury. *See* Furnish, Distributing Tort Liability: Contribution and Indemnity in Iowa, 52 Iowa L.Rev. 31, 33–35 (1966).

Equally unavailing is the argument that the literal terms of the statute prevent any such shifting of liability. Section 321.493 reads that " . . . the owner of the motor vehicle *shall* be liable for such damage" (in cases of his driver's negligence). Thus, it could be asserted that the statute by its very terms prohibits a shifting of responsibility.

The "literal reading" argument is effectively muted by the Iowa Supreme Court's decision of Peters v. Lyons, 168 N.W.2d 759 (1969). In *Peters,* suit was brought against the owner of a dog which had broken its restraining choke chain and attacked the plaintiff. The defendant, the dog's owner, sought indemnity against the seller of the chain, alleging that it was defective. The seller, S. S. Kresge Co., argued that the dog's owner was statutorily liable for the pet's harmful acts, and hence that she couldn't shift the loss to someone else. The Court made the following comments to Kresge's argument:

> Kresge also argues that indemnity isn't available here because our dog statute, section 351.28, imposed absolute liability, which is a nondelegable duty. If the dog gets loose the owner cannot shift the blame to another. It is true the statute imposes absolute

liability. Puls v. Powelson, 142 Iowa 604, 606, 121 N.W. 1, so holds:

". . . . The action was brought under the statute. The statute creates an absolute liability on the part of the owner of a dog for damages done by him, regardless of knowledge or negligence on the part of the owner. In this respect the statute may be said to be drastic, though in the interest of public policy."

If there is a nondelegable duty growing out of this section, a point we do not decide, *the duty runs to the injured party. It does not affect a controversy between claimed wrongdoers.*

This is not the situation considered in Lattner v. Immaculate Conception Church, 255 Iowa 120, 129, 121 N.W.2d 639. There defendant urged the violation of a statute does not amount to negligence unless the plaintiff was a member of the class the statute is designed to protect and the harm is one the statute is designed to prevent. We recognized the rule has much support but declined to follow it, primarily on the authority of Hansen v. Kemmish, 201 Iowa 1008, 1012, 208 N.W. 277, 279, 45 A.L.R. 498, where the Iowa rule is stated: "A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance." As between an injured party and the violator of a statute or ordinance, we adhere to those precedents. This does not mean the violator of a statute may not turn for indemnity to the person who allegedly caused him to be in violation of the statute.

The situation is closely analogous to Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1143, 49 N.W.2d 501, 506, where defendant Bus Company, liable to the injured party by reason of the statutorily imposed high degree of care owed by a common carrier to its passenger, could seek recovery over from another: "One who is liable only by reason of a duty imposed by law for the consequences of another's negligence may recover over against the active perpetrator of the wrong. . . . ." 168 N.W.2d at 766 (emphasis added).

The Court's arguments in *Peters* seem equally applicable to the situation here. While an owner's liability will be primary as between a plaintiff and himself, it is secondary insofar as the owner and a negligent driver are concerned. *Cf.* City of Des Moines v. Barnes, 238 Iowa 1192, 30 N.W.2d 170 (1947).

Based on the foregoing, this Court concludes that if the Iowa Supreme Court were directly faced with this issue, it would hold that a non-negligent vehicle owner made liable solely by virtue of § 321.493 can seek indemnity from his driver. Dictum in numerous Iowa cases lead to this result, and the language of § 321.493 itself does not mandate a ruling to the contrary.

Having determined that Miller could seek indemnity from Hall if held liable to the plaintiff, it follows that the same considerations which led to the granting of BCD's summary judgment motion apply here. Plaintiff Bruce has agreed to hold Hall harmless from future liability. Thus, judgment against Miller would lead to the same circuity of litigation found to be controlling in consideration of the BCD motion.

Indeed, the circuity of actions is evident from a study of the pleadings in this very case. Plaintiff Bruce has sued defendant Miller based upon § 321.493. Defendant Miller has impleaded third-party defendant Hall, seeking indemnity. Third-party defendant Hall has filed a "cross-claim" against the plaintiff, Bruce, invoking the "hold harmless" clause of the covenant. Thus, given the viability of the indemnity and hold harmless theories, this litigation need go no farther.[1]

---

1. The Iowa Supreme Court has recently demonstrated an awareness of a similar circuity of actions in Schnebly v. Baker, 221 N.W.2d 739 (1974).

The principles of Simpson v. Townsley, *supra,* and Dickey v. Meier, *supra,* dictate that defendant Miller's summary judgment motion be sustained.

Accordingly, it is ordered that the motion of Ezra Miller, d/b/a Kalona Motor Leasing, is hereby sustained.