# IN THE SUPREME COURT OF IOWA

No. 20–0303

Submitted December 16, 2020—Filed March 12, 2021

**TERRY K. JONES** and **CHRISTINE JONES,**

Appellees,

vs.

**THE GLENWOOD GOLF CORPORATION,**

Appellant.

---

Appeal from the Iowa District Court for Mills County, Richard H. Davidson, Judge.

The defendant golf cart owner appeals from an order granting a new trial in a negligence action in which the jury found the driver who was a released party one hundred percent at fault. **REVERSED AND CASE REMANDED FOR DISMISSAL.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

William H. Larson, Zachary D. Clausen (argued), Rene Charles Lapierre (argued) of Klass Law Firm, L.L.P., Sioux City, for appellant.

Stephen A. Rubes (argued) and Joseph J. Hrvol of Joseph J. Hrvol, P.C., Council Bluffs, for appellees.

**WATERMAN, Justice.**

In this appeal, we must decide a question of first impression: whether an injured passenger's settlement and release of negligence claims against the driver by operation of law extinguished his vicarious liability claim against the vehicle owner under Iowa Code section 321.493 (2017) (Owner's Responsibility Law) for damages caused by the driver. A father–son golf outing ended badly when the son, driving a golf cart owned by the golf course, struck a bridge and the impact ejected the passenger (his father) who suffered severe injuries. The passenger settled his claims against the driver and signed a release that expressly reserved his claims against the owner. He then sued the golf course for owner liability under section 321.493 and common law premises liability (based on the condition of the bridge). The owner moved for summary judgment contending the release of the driver extinguished the statutory liability claim. The district court denied the motion and the case proceeded to trial. The jury found the owner not negligent for premises liability and found that the driver was one hundred percent at fault for damages totaling $500,000, including $20,000 for past medical expenses. The evidence showed the past medical bills were at least $295,463, and on that basis, the court granted the plaintiffs' motion for a new trial on damages against the owner. The owner appealed, and we retained the case.

On our review, for the reasons explained below, we hold that the passenger's release of the driver extinguished the owner's vicarious liability under section 321.493 for the damages negligently caused by the driver. This result is mandated by our precedent on vicarious liability and Iowa Code chapter 668 (Comparative Fault Act) and reflects the majority rule in other jurisdictions. The district court erred by ordering a new trial, and we reverse that ruling and remand the case for dismissal.

## I. Background Facts and Proceedings.

On September 14, 2017, plaintiff Terry Jones went golfing with his son, Jeff Jones, at Glenwood Golf Course in Mills County. Glenwood Golf Corporation owns the golf course and the golf carts used by its patrons with its permission. Jeff was driving the cart with Terry in the passenger seat. As they crossed a bridge in the cart, the cart started veering to the left and when Jeff over-corrected, the cart's left front tire became wedged into the steel structure of the bridge. The impact ejected Terry through an opening in the bridge's safety-rail. Terry fell about twenty-five feet onto a creek bed below filled with concrete and steel reinforcement bar. Terry suffered life-threatening injuries and was airlifted by helicopter to the University of Nebraska Medical Center. He underwent multiple surgeries and spent months hospitalized and in a rehabilitation facility.

Terry and his wife, Christine Jones, entered into a settlement agreement with Jeff and his homeowner's liability insurer, Liberty Mutual Insurance Company. Under the terms of the six-page contract entitled "**RELEASE AND INDEMNITY AGREEMENT**," Liberty Mutual paid $817,500 to Terry and Christine (identified in the contract as "the Plaintiffs") and their lawyer, and $60,000 to Pacific Life & Annuity Services, Inc. to purchase a structured settlement annuity for additional monthly payments. The settlement released all claims against Jeff Jones and Liberty Mutual (identified in the contract as the "Released Parties") arising from the golf cart accident. The agreement included these terms:

> [T]he Plaintiffs further agree to hold the Released Parties harmless, and to defend and indemnify the Released Parties from any suits, claims, cross-claims, judgments, costs or expenses of any kind, including attorney's fees, arising from assertion of any such liens, reimbursement right, subrogation interest or claim.

D. **PRESERVATION OF CLAIM**. By signing this agreement and entering into this Release Plaintiffs specifically preserve any and all claims they may have against the Glenwood Golf Course, Glenwood Golf Corporation and any other responsible party.

E. As further consideration of this payment, the Plaintiffs hereby agree that:

1. This Release and Indemnity Agreement covers the released parties' proportionate responsibility for all injuries and damages, whether known or not, and which may hereafter appear or develop arising from the matters referred to above[.]

After releasing their negligence claims against Jeff as driver of the golf cart, Terry and Christine filed this civil action against Glenwood alleging two theories of liability. First, their petition alleged that Glenwood "breached its duty as the owner of the Glenwood Golf Course, pursuant to the Restatement (2nd) of Torts, Section 344, to protect Plaintiff Terry K. Jones from the accidental, negligent, or intentional harmful acts of third persons, including Jeff Jones." This premises liability claim was factually based on the alleged unsafe condition of the bridge. Second, their petition alleged that Glenwood, as the owner of the golf cart, "is liable for damages caused by reason of the negligence of the driver of such vehicle in accordance with Chapter 321.493 of the Iowa Code." The parties agreed that the golf cart is a vehicle within the meaning of section 321.493 and that Jeff was driving the cart with Glenwood's permission.

Glenwood filed a motion for summary judgment contending that by releasing the driver, the plaintiffs extinguished their section 321.493 claims against the owner. Plaintiffs filed their own motion for summary judgment, arguing that Glenwood was liable as owner of the unsafe bridge. The district court denied both summary judgment motions. The court, noting conflicting expert testimony, determined that "whether the bridge was safe and maintained properly" was a disputed issue of material fact

precluding summary judgment for the plaintiffs. The court denied Glenwood's motion, reasoning that "[s]ection 321.493 does not specifically exclude liability if the driver is released by settlement. Further, no case law in Iowa provides an escape from liability under § 321.493 in case of a released party." The court ruled that Glenwood, if liable, would get an offset for the plaintiffs' settlement with Jeff.

The case proceeded to a jury trial. Glenwood failed to move for a directed verdict on grounds that the plaintiffs' settlement with Jeff precluded liability under section 321.493. The court submitted both liability theories to the jury, with Jeff Jones on the verdict form as a released party. The jury found Glenwood as owner of the golf course was not negligent under the premises liability claim. The jury found that "Jeffrey Jones as driver of the cart" was negligent and that his fault caused the plaintiffs' damages. The jury assessed one hundred percent of the fault to "Jeffrey Jones (Released Party)." The jury awarded damages totaling $500,000, including $20,000 for past medical expenses. The district court entered judgment that, after applying a dollar for dollar (pro tanto) setoff, awarded the plaintiffs zero damages:

> Jeffery Jones is a released party having entered into a settlement with Plaintiffs. The amount paid to Plaintiffs by Jeffery Jones in that settlement is in excess of the total damages awarded by the jury in this case under the owner liability claim. Because the jury did not find or assign Glenwood Golf Corporation any percentage of fault under the tort claim theory the court must reduce Plaintiffs' recovery considering the Jeffery Jones settlement. Accordingly, the court reduces the award of $500,000 against Defendant Glenwood Golf Corporation, as owner of the golf cart operated by Jeffery Jones, to zero dollars. . . . THEREFORE the Court enters judgment in favor of Plaintiffs Terry and Christine Jones but reduces the amount of damages to zero dollars.

The plaintiffs filed a motion for new trial and additur on grounds that the verdict was inadequate because the evidence showed the past

medical expenses were many times the amount awarded. Glenwood acknowledged the evidence showed past medical expenses of at least $295,463 while the plaintiffs argued the evidence showed far greater amounts. The district court again ruled that Glenwood "is liable on the owner liability claim" and granted a new trial on damages only. Glenwood appealed, and the plaintiffs filed no cross-appeal. We retained the case.

## II. Standard of Review.

The dispositive issue on appeal is whether the plaintiffs' release of the golf cart driver, Jeff, extinguished their vicarious liability claims against Glenwood as the golf cart owner under Iowa Code section 321.493 for the damages caused by Jeff's negligent driving. This is a question of law. "We review the application and interpretation of statutes for errors at law." *Beganovic v. Muxfeldt*, 775 N.W.2d 313, 317 (Iowa 2009). "The standard of appellate review regarding the permissible scope of a district court judgment is for errors of law." *Rethamel v. Havey*, 715 N.W.2d 263, 266 (Iowa 2006). When the ruling on a motion for new trial is "based on a legal question, our review is on error." *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006) (quoting *Richards v. Anderson Erickson Dairy Co.*, 699 N.W.2d 676, 678 (Iowa 2005)).

## III. Analysis.

The fighting issue on appeal is whether the district court correctly ruled that the plaintiffs can recover from Glenwood as the golf cart owner under Iowa Code section 321.493 after they released their claims against the driver. We first address error preservation, and elect to decide the issue, because if the plaintiffs' release of the driver extinguishes the owner's liability, there is no point to a new trial on damages. We next address the legal effect of the plaintiffs' Release and Indemnity Agreement.

We conclude that the settlement with the driver extinguished the owner's vicarious liability as a matter of law, based on precedent and the interplay of the Comparative Fault Act with the Owner's Responsibility Law.

**A. Error Preservation.** As noted, Glenwood moved for summary judgment on the legal question of whether the plaintiffs' release of their negligence claims against Jeff as the golf cart driver extinguished their section 321.493 claim against Glenwood. The parties briefed and argued that issue, and the district court squarely decided that question of law in its ruling denying Glenwood's motion for summary judgment. The district court again ruled that Glenwood was liable for Jeff's fault in its posttrial order granting the plaintiffs' motion for a new trial on damages. The parties devoted their appellate briefing to the section 321.493 issue, and the plaintiffs do not contest error preservation.

The problem is that Glenwood failed to move for a directed verdict on that issue at trial. As we held in *Estes v. Progressive Classic Insurance,* rulings denying summary judgment are interlocutory. *See* 809 N.W.2d 111, 114 (Iowa 2012) ("An order overruling a motion for summary judgment is a nonreviewable order when the district court finds a genuine issue of material fact exists and the case proceeds to final trial."). As we explained in *Estes,*

> When the district court denies a party's motion for summary judgment and the party appeals the final verdict, we review the issues raised in the unsuccessful motion for summary judgment based on the record made during trial and on the motion for directed verdict to determine if the district court committed error.

*Id.* Here, the district court denied Glenwood's motion for summary judgment under section 321.493 based on the court's interpretation of the statute, not because of a genuine issue of material fact. Nevertheless, even when "the purported error was 'purely one of law,' " the party whose

motion for summary judgment was denied must do more to preserve the issue for appellate review. *See Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 252 (2d Cir. 2021) (quoting *Keeling v. Hars*, 809 F.3d 43, 47 (2d Cir. 2015)) (declining to reach legal issue decided in ruling denying summary judgment without an interlocutory appeal or motion for a judgment as a matter of law at trial). Glenwood failed to renew its section 321.493 legal argument by motion for directed verdict at trial or by resisting the plaintiffs' motion for new trial on that ground.[1] Doing so would have given the district court another opportunity to correct its error. Yet, as noted, the district court in granting the motion for new trial again ruled that Glenwood is liable for Jeff's fault. Glenwood timely appealed from that ruling.

Both sides want the issue resolved in this appeal. If we decline to decide the issue, Glenwood on remand would simply renew its legal argument in a motion for directed verdict and judgment notwithstanding the verdict in the new trial. That new trial would be a waste of the parties' and court's time and resources if the legal issue is decided adversely to the plaintiffs. Why go through another multi-day jury trial if any damage award would be vacated on the second appeal? Because the release issue is certain to arise on remand, we decide it now.

**B. The Legal Effect of the Plaintiffs' Release of the Driver.** We have never decided whether a plaintiff's release of negligence claims against a driver extinguishes the vehicle owner's vicarious liability under the Owner's Responsibility Law. We begin with the text of the statute,

---

[1]At oral argument in our court, Glenwood's counsel stated that the release issue was raised during and after trial. We do not find that in the trial transcripts. It is the appellant's burden to provide the record supporting its legal argument. *See Estes*, 809 N.W.2d at 115–16. A record can be made of off-the-record colloquies. *See* Iowa R. App. P. 6.806; Iowa R. Civ. P. 1.1001(1).

which provides, "in all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage." Iowa Code § 321.493(2)(*a*). "[T]he purpose of the law is to provide greater protection for an innocent third party from the careless operation of a motor vehicle by making the owner responsible for the negligence of a driver to whom the owner entrusted the vehicle." *Beganovic*, 775 N.W.2d at 318.

> Vicarious liability is broadly defined as liability a person bears for the actionable conduct of another person because of a relationship between the two parties. We recognize our owners' responsibility statute does not operate to impute the driver's liability to the owner, but imposes liability by imputing the driver's negligence to the owner. In other words, the liability imposed under the statute is the owner's own liability. This liability versus negligence dichotomy has been important in helping us decide that a legal defense against liability possessed by the driver does not inure to the owner. Nevertheless, *the owners' responsibility statute remains under the umbrella of vicarious liability by imposing liability on an owner for the actionable negligence of the driver.*

*Id.* at 318 n.4 (emphasis added) (citations omitted).

We applied this "liability versus negligence dichotomy" in *Smith v. CRST International, Inc.*, 553 N.W.2d 890, 895 (Iowa 1996) (emphasis omitted). William Smith was a passenger in a tractor-trailer operated by his coemployee and suffered injuries in an on-the-job motor vehicle accident. *Id.* at 891. The driver was statutorily immune as a coemployee under Iowa Code section 85.20. *Id.* at 892. The vehicle owner, however, was not Smith's employer or coemployee. *Id.* We held that Smith could recover from the owner under section 321.493 because that statute imposed owner liability for the driver's "alleged *negligence,* not [the driver's] liability for his negligence." *Id.* at 895. We reached the same conclusion under Iowa's aircraft owner liability statute in *Estate of Dean v. Air Exec,*

*Inc.* 534 N.W.2d 103, 104–05 (Iowa 1995). The plaintiffs argue these cases preclude Glenwood from asserting Jeff's release as a defense. Glenwood argues these cases are distinguishable, because Jeff had no *immunity* defense; rather the plaintiffs' voluntarily released their *negligence* claims against him. We agree with Glenwood.

California precedent is instructive. California has an owner's responsibility law similar to Iowa's. Cal. Veh. Code § 17150 (West, Westlaw current with urgency legislation through Ch. 9 of 2021 Reg. Sess.).[2] In *Galvis v. Petito*, the driver caused an accident that injured his coemployee passengers. 16 Cal. Rptr. 2d 560, 561 (Ct. App. 1993). The nonemployer owner of the vehicle was held liable to the injured coemployees even though the driver had statutory immunity under California's Workmen's Compensation Act. *Id.* at 561–62, 568–69. Yet, "[w]here a vehicle's operator settles the claim of a third party injured due to the operator's negligence for a sum equal to, or in excess of, the amount of the vehicle owner's statutory liability for the operator's negligence, the owner's obligation is discharged." *Flores v. Enter. Rent-A-Car Co.*, 116 Cal. Rptr. 3d 71, 83 (Ct. App. 2010). Another California appellate court harmonized these cases because "[t]he liability of the owner imposed by Vehicle Code section 17150 is primary and direct as far as the injured third party is concerned. However, as between the owner and the operator

---

[2]California's owner responsibility law states:

Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner.

Cal. Veh. Code § 17150 (West). An owner's liability based solely on this statute is capped by specified dollar amounts. *See id.* § 17151.

such liability is secondary." *Rashtian v. BRAC-BH, Inc.,* 12 Cal. Rptr. 2d 411, 415 (Cal. Ct. App. 1992).

We reach the same conclusion under Iowa law. Glenwood's statutory vicarious liability for Jeff's negligence is secondary to Jeff's primary liability to the plaintiffs for his negligent driving. "Ordinarily, if an owner of the vehicle is liable only vicariously by operation of law, such as under Iowa Code section 321.493, the owner may seek indemnity against the operator of the vehicle." *Universal Underwriters Ins. v. Am. Fam. Ins. Grp.,* 587 N.W.2d 224, 225 (Iowa 1998); *see also Est. of Bruce v. B.C.D., Inc.,* 396 F. Supp. 157, 164 (S.D. Iowa 1975) (determining that a vehicle owner liable to a third person under Iowa Code section 321.493 is entitled to recover indemnity from the driver). Glenwood thus had a right to file a cross-claim against Jeff for indemnity or contribution, and presumably with that in mind, Jeff's settlement with the plaintiffs obligated them to defend, indemnify, and hold him harmless on such a cross-claim.

This is where Iowa's Comparative Fault Act comes into play. With respect to Glenwood's alleged statutory liability under section 321.493 for the damages caused by Jeff's negligent driving, the driver and owner are considered one party under Iowa Code section 668.3(2)(*b*). *See, e.g., Whitlow v. McConnaha,* 935 N.W.2d 565, 567 n.1 (Iowa 2019); *Thomas v. Solberg,* 442 N.W.2d 73, 74 (Iowa 1989); *see also Biddle v. Sartori Mem'l Hosp.,* 518 N.W.2d 795, 799 (Iowa 1994) (holding that vicariously liable employer and its employee were properly "treated as a single party" (quoting Iowa Code § 668.3(2)(*b*))). Jeff is a released party under Iowa Code section 668.7, entitled, "Effect of release," which provides,

> A release . . . entered into by a claimant and a person liable discharges that person from all liability for contribution, but

> it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, as determined in section 668.3, subsection 4.

The plaintiffs' release of their claims against Jeff thus extinguished not only the plaintiffs' owner liability against Glenwood, but also Glenwood's contribution claim against Jeff under section 668.7. But the same statute operated to reduce the plaintiffs' recovery from Glenwood, a nonsettling party defending the separate premises liability claim, by the percentage of fault the jury assigned to Jeff—one hundred percent—resulting in a judgment of zero.[3] *Biddle v. Sartori Memorial Hospital* illustrates how this works, and in our view, *Biddle* is controlling. 518 N.W.2d 795.

Sandra Biddle "became ill after eating a hot dog," and, "[c]omplaining of nausea, weakness, chest pains, and shortness of breath, she was rushed by ambulance to Sartori Memorial Hospital" where she was admitted as a possible cardiac patient. *Id.* at 796. The emergency room physician (a hospital employee) merely treated her for gastroenteritis, and she gained some relief from antacid and antinauseant medications. *Id.* She was discharged and died of heart failure around four hours later. *Id.* Her husband as administrator of her estate brought medical malpractice claims against the physician, the hospital, and the municipal owner of the hospital. *Id.* He settled with the physician before trial, and the district court ruled that the settlement extinguished the hospital's vicarious liability for its physician's negligence. *Id.* The jury returned a defense verdict for the remaining defendants. *Id.* Biddle appealed the ruling on the effect of his settlement. *Id.* at 797.

---

[3]The plaintiffs did not cross-appeal from the jury's liability determination or the district court ruling limiting the new trial to damages.

We distinguished claims against joint tortfeasors from vicarious liability claims, because

> [t]he "percentage of negligence" attributable to the conduct of the servant constitutes the entire "single share" of liability attributable jointly to the master and servant. . . . Because this percentage of negligence represents the "single share" of liability covered by the common liability of the master and servant, the master is necessarily released from vicarious liability for the released servant's misconduct.

*Id.* at 798 (omission in original) (quoting *Horejsi v. Anderson*, 353 N.W.2d 316, 318 (N.D. 1984)). We held that the release of the doctor extinguished the vicarious liability claim against the hospital:

> The doctor and hospital were properly "treated as a single party" for purposes of the release. Iowa Code § 668.3(2)(b). By releasing the doctor, Biddle satisfied the percentage of fault attributable to him and, vicariously, attributable to the hospital. That is, the settlement wiped out any fault derived from the doctor's conduct, separate and apart from the hospital's own negligence, for which it remained accountable at trial.

*Id.* at 799. *Biddle* remains good law.[4] *See Hook v. Trevino*, 839 N.W.2d 434, 437, 441, 443 n.3, 445 (Iowa 2013) (holding the state was unprotected by its volunteer driver's statutory immunity and harmonizing *Estate of Dean* and *Smith* while distinguishing *Biddle*). And under *Biddle*, the plaintiffs' settlement with Jeff discharged the percentage of fault the jury attributed to him (one hundred percent).

The plaintiffs argue that settlements with drivers will be discouraged if the release operates to extinguish the owner's vicarious liability under section 321.493. We disagree. In *Biddle*, we explained that the Comparative Fault Act's bar on contribution claims against released

---

[4]The district court distinguished *Biddle* on grounds that it involved master–servant vicarious liability. That is a distinction without a difference here. The common denominator is that one party (the employer or vehicle owner) is vicariously liable for the negligence of another (employee or permissive driver).

parties actually *encourages* settlements by contemporaneously extinguishing vicarious liability. 518 N.W.2d at 798–99. Otherwise, a principal "found vicariously liable for the negligent acts of an agent retains a right of full indemnity against the actual tortfeasor." *Id.* at 799. Discharge of the owner's vicarious liability for the driver's negligence is a necessary corollary to discharge of the driver's liability to the owner for contribution or indemnity.

The contrary holding sought by the plaintiffs would create problems. What if the driver's insurer settled for a pittance? Would the owner then be responsible for all of the unsatisfied damages? Chapter 668 puts the risk of an inadequate settlement on the plaintiff who elects to accept it. *Thomas*, 442 N.W.2d at 77 (holding chapter 668 replaced pro tanto credit rule with proportionate credit rule). How can the vehicle owner be bound by a settlement contract to which it was not a party? It cannot. And without the protection of section 668.7, Jeff's liability insurer would have little reason to settle with the plaintiffs if it remained exposed to liability defending Jeff on Glenwood's cross-claim. How can the jury allocate fault between a vehicle owner and the driver? It cannot, because they must be treated as the same party for fault allocation.

Normally the nonsettling defendant points the finger at the empty chair, the released party, whose fault comes off the plaintiff's recovery. But a nonsettling defendant defending separate liability claims, like the hospital in *Biddle* for the alleged nursing malpractice, or Glenwood for premises liability, would be put in an untenable position if it remained vicariously liable for fault the jury put on the settling party. Glenwood, in defending claims that the bridge was unsafe, could no longer blame the accident on Jeff's careless driving, that is, unless it could collect from Jeff's liability insurer for indemnity, as the settlement agreement provided. Our

holding today avoids all these problems including the circuity of litigation that would result if vicariously liable owners could sue the released drivers for reimbursement.

Even before our state enacted chapter 668 in 1984, Chief Judge Hanson of the United States District Court for the Southern District of Iowa predicted our court would avoid that "circuity of litigation" by holding that the release of the driver effectively extinguishes the vicarious liability of the vehicle owner under section 321.493, even when the release purported to reserve the plaintiff's claim against the owner. *Bruce's Est.*, 396 F. Supp. at 162–65. We so hold today.

Our holding is supported by the majority of other jurisdictions. *See, e.g.*, *Simpson v. Townsley*, 283 F.2d 743, 745, 748 (10th Cir. 1960) (holding that release of driver "removed any foundation upon which to impute negligence to [the driver's] employers"); *Terry v. Memphis Stone & Gravel Co.*, 222 F.2d 652, 653 (6th Cir. 1955) (per curiam) (stating that "a covenant not to sue the truck owner and the driver—appellees alleged agents—would necessarily release appellee"); *Cunha v. Colon*, 792 A.2d 832, 833–34 (Conn. 2002) (holding the release of the driver extinguished the liability of the vehicle lessor); *Elias v. Unisys Corp.*, 573 N.E.2d 946, 946, 948–49 (Mass. 1991) (holding that a general release of the agent-driver precludes a claim against the principal-owner); *Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters*, 418 N.W.2d 488, 491 (Minn. 1988) (en banc) ("We hold that the release . . . of the insurer's agent in this case released the insurer from vicarious liability."); *McCurry v. Sch. Dist.*, 496 N.W.2d 433, 444 (Neb. 1993) (holding that a "settlement with the agent constitutes a settlement with the principal, no matter what the parties may have intended"); *Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989) ("We hold that absent any showing of an affirmative act, or failure

to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal."); *DelSanto v. Hyundai Motor Fin. Co.*, 882 A.2d 561, 566 (R.I. 2005) (holding that the release of the driver also released the lessor of the vehicle, and stating "exposure to liability ceases once there has been a resolution of the controversy involving the person or entity that triggered the possibility of vicarious liability").

A majority of courts in other jurisdictions have also held that the release of the driver operates to extinguish claims against the owner notwithstanding the plaintiff's express reservation of a right to sue in the settlement agreement. *See, e.g., Bacon v. United States*, 321 F.2d 880, 881–82, 884–85 (8th Cir. 1963) (holding that settlement with employee-driver released the employer-owner from liability despite a specific reservation of that claim); *Jacobson v. Parrill*, 351 P.2d 194, 196, 200–01 (Kan. 1960) (holding that the release of the negligent driver operated to extinguish the owner's liability even though the release expressly reserved the right to sue him); *Theophelis v. Lansing Gen. Hosp.*, 424 N.W.2d 478, 480, 491 (Mich. 1988) (plurality opinion) (holding that release of hospital employees extinguished vicarious liability of hospital even though the release specifically reserved claims against nonsettling defendants); *J & J Timber Co. v. Broome*, 932 So. 2d 1, 7–8 (Miss. 2006) (adopting the rule of "[a] majority of states . . . that the release of a tortfeasor thereby releases the tortfeasor's principal for all claims of vicarious liability, despite any reservation of rights"); *Mid-Continent Pipeline Co. v. Crauthers*, 267 P.2d 568, 569, 571 (Okla. 1954) (holding that the release of the agent also released the principal despite the plaintiff's reservation of the right to sue); *Est. of Williams v. Vandeberg*, 620 N.W.2d 187, 188–89, 190–91 (S.D. 2000) (following *Biddle* and *Theophelis v. Lansing General Hospital* to hold

the release of the driver constitutes a release of the employer "even when the release contains an express reservation" and stating, "Our holding today fosters the principle of finality while attempting to limit circuity of action and multiplicity of lawsuits, which in this Court's wisdom, is the fairer result.").

We reach the same conclusion under Iowa law. *See Seastrom v. Farm Bureau Life Ins.*, 601 N.W.2d 339, 342, 344 n.3, 344–45 (Iowa 1999) (recognizing release of claims against insurance agent that reserved claims against his employer did not preserve claims for vicarious liability under *Biddle* but allowed separate tort claims for insurer's own bad-faith conduct).

The district court erred by ordering a new trial against Glenwood, which is entitled to judgment in its favor as a matter of law under Iowa Code section 321.493 based on the plaintiffs' release of claims against their son Jeff.

**IV. Disposition.**

For those reasons, we reverse the district court's ruling granting a new trial against Glenwood. We remand this case for entry of an order of dismissal.

**REVERSED AND CASE REMANDED FOR DISMISSAL.**